**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 20 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SUZANNE MYERS, Administratix of the
Estate of Thomas James Myers, deceased;
SAMSON MYERS, individually, and
through Suzanne Myers, his parent and
Next Friend, and; SUZANNE MYERS,
individually,

        Plaintiffs- Appellants,

   v.

OKLAHOMA COUNTY BOARD OF
COUNTY COMMISSIONERS; J.D.
SHARP, individually and as Sheriff of the
Oklahoma County Sheriff's Department;
SCOTT CANNON, individually and as a
Deputy Sheriff of the Oklahoma County
Sheriff's Department; MARSHALL
MCDONALD, individually and as a
Deputy Sheriff of the Oklahoma County
Sheriff's Department,

        Defendants - Appellees.

No. 97-6003

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 94-CV-246)**

---

Submitted on the briefs:[*]

Carl J. Franklin, Norman, Oklahoma, for Plaintiffs-Appellants.

Robert H. Macy, District Attorney, John M. Jacobsen, Assistant District Attorney, Office of the District Attorney, Oklahoma City, Oklahoma, for Defendants-Appellees.

———————————

Before **TACHA**, **BRORBY**, and **EBEL**, Circuit Judges.

———————————

**TACHA**, Circuit Judge.

———————————

This case arises out of the tragic shooting death of Tom Myers by two officers of the Oklahoma County Sheriff's Department. Mr. Myers's survivors, including his wife Suzanne, sued the sheriff, the County, and the two officers who shot Mr. Myers. The suit alleged that in shooting Mr. Myers, the defendants committed various torts and constitutional violations. The district court granted summary judgment in favor of the sheriff in his official capacity and the County. The plaintiffs now appeal that grant of summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.    **Background**

On April 3, 1993, Tom Myers and his wife Suzanne had an argument. Tom forced Suzanne, their infant son, and Tom's aunt out of the apartment in which they all were

———————————

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

2

staying. The three spent the night at Suzanne's parents' house. Although she knew that her husband was drunk, armed with a .22 caliber rifle, and suicidal, Suzanne returned to the apartment the next day. When Tom would not let her in, Suzanne requested police assistance.

Officers of the Bethany Police Department and Oklahoma County Sheriff's office arrived on the scene and established contact with Mr. Myers in an attempt to prevent his suicide. During a conversation with one of those officers, Mr. Myers fired a shot from his rifle. Lieutenant Neil Troutman then took over the negotiations with Mr. Myers, speaking to him by telephone several times during the course of the afternoon and evening. Mr. Myers told Lt. Troutman that he was tired of living and that he wanted to die. On the afternoon of April 4, the officers took a statement from Suzanne Myers and obtained an Order of Detention and Forcible Entry from a special district judge of the Oklahoma County District Court.

At approximately 8:00 p.m. Sheriff J.D. Sharp ordered entry into the apartment to enforce the court order and to take Mr. Myers into protective custody. Officers Marshall McDonald and Scott Cannon entered. According to the officers' testimony, Mr. Myers pointed his .22 rifle at them upon their entry into the apartment. Sgt. McDonald testified that he yelled "Freeze, Police," upon realizing that Mr. Myers was pointing the weapon at him. Sgts. McDonald and Canon fired their weapons at Mr. Myers, killing him.

The plaintiffs sued Sheriff Sharp, the County, and Officers Cannon and McDonald

under 42 U.S.C. § 1983 for violating Mr. Myers's constitutional rights under the Fourth and Eighth Amendments. The plaintiffs also sued the defendants for committing the torts of assault, battery, negligence, and intentional infliction of emotional distress. The district court granted summary judgment in favor of Sheriff Sharp in his official capacity and the County on the section 1983 and state law claims. The court reasoned that the plaintiffs had failed to produce relevant evidence for the constitutional claims brought under section 1983, and that Oklahoma law provided immunity on the state law claims. The court, however, denied summary judgment for the sheriff in his individual capacity and for Officers Canon and McDonald. The suit against the individual defendants went to trial before a jury, and the defendant officers prevailed.[1] The plaintiffs now appeal the summary judgment in favor of Sheriff Sharp (in his official capacity) and the County.

## II.    The Constitutional Claims

The plaintiffs allege that the County violated Mr. Myers's Fourth Amendment rights because Officers Cannon and McDonald used excessive force in attempting to apprehend Mr. Myers and because the County failed to train its officers in suicide prevention, counseling the mentally ill, or treatment for substance abusers. The plaintiffs

---

[1] The only constitutional claim addressed at trial was the Fourth Amendment claim based on the alleged use of excessive force; the jury was not asked to decide whether the individual officers committed an Eighth Amendment violation. See Appellees' App. (Verdict Form).

4

also assert that the County violated Mr. Myers's Eighth Amendment rights because its officers failed to tend to Mr. Myers's serious medical needs. The plaintiffs appeal the district court's grant of summary judgment to Sheriff Sharp and the County with respect to each of these claims.

We review a grant of summary judgment de novo, applying the same legal standard as the district court. See Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if the plaintiffs have failed to present evidence sufficient to support a reasonable inference that the County or Sheriff Sharp violated the relevant constitutional standards. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

A. The Fourth Amendment Claims

1. The Effect of the Jury Verdict

The defendants argue that we should not undertake a de novo review of the record with respect to the excessive force claim because the jury verdict in favor of the individual officers precludes a finding that Sheriff Sharp (in his official capacity) or the County[2] is liable for violating Mr. Myers's Fourth Amendment rights.

A plaintiff suing a municipality under section 1983 for the acts of one of its

---

[2]"[A section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). Thus, this opinion refers to the suit against the County and the suit against Sheriff Sharp in his official capacity both as the "suit against the County."

5

employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). It is well established, therefore, that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994); Watson v. City of Kansas City, 857 F.2d 690, 697 (10th Cir. 1988). In Heller:

> the Supreme Court held that a jury verdict acquitting a Los Angeles police officer of a charge of excessive force precluded the imposition of liability on the City of Los Angeles for adopting a policy condoning the use of excessive force. The Court reasoned that where a municipality is "sued only because [it was] thought legally responsible" for the actions of its officers, it is "inconceivable" to hold the municipality liable if its officers inflict no constitutional harm, regardless of whether the municipality's policies might have "authorized" such harm.

Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993) (quoting Heller, 475 U.S. at 799).

In this case, the jury found that Officers Sharp, Cannon, and McDonald did not use excessive force against Mr. Myers. This verdict seems to preclude a finding in favor of the plaintiffs on either of their Fourth Amendment claims against the County, because both those claims require a finding that the officers used excessive force.

As noted above, the plaintiffs' first Fourth Amendment claim is based on the

6

straightforward theory that the officers used excessive force in attempting to take Mr. Myers into protective custody and that County policies were the moving force behind their use of such force. The plaintiffs' second Fourth Amendment claim is that the County failed to train its officers in the use of deadly force or handling persons who are suicidal, mentally disturbed, and/or substance abusers. As the Supreme Court explained in <u>City of Canton</u>, 489 U.S. at 389-90, a municipality's failure to train is in general not enough to prove a constitutional violation. Instead, section 1983 plaintiffs can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the "moving force" behind an already established constitutional deprivation. <u>See</u> <u>id.</u> at 389. Therefore, the plaintiffs' failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force against Mr. Myers. The jury's finding that the individual officers were not liable would seem to foreclose both Fourth Amendment claims against the County.

There is, however, one situation in which the <u>Heller</u> rule does not foreclose suit against the County under the Fourth Amendment. If the jury based its verdict on the ground that the officers were entitled to qualified immunity, the <u>Heller</u> rule precluding liability is inapplicable. In such a case, the jury may have found that the officers *did* use excessive force, but that they were entitled to immunity because they acted reasonably in light of existing law. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 638

(1987); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (stating that an official is protected by qualified immunity if the officer's actions were objectively reasonable in light of clearly established legal rules).  Although individual officers may receive the protection of qualified immunity, "municipalities enjoy no such shield."  Watson, 857 F.2d at 697.  Thus, if a jury returns a general verdict for an individual officer premised on qualified immunity, there is no inherent inconsistency in allowing suit against the municipality to proceed since the jury's verdict has not answered the question whether the officer actually committed the alleged constitutional violation.  See id.

In this case, the defendants moved for summary judgment on the basis of qualified immunity, but the district court denied that motion.  See Myers v. Oklahoma County Bd., 80 F.3d 421, 424-26 (10th Cir.) (concluding that defendants could not take interlocutory appeal of district court denial of summary judgment), cert. denied, 117 S. Ct. 383 (1996).  The defendants may have attempted to raise the issue at trial as well. See Quezada v. County of Bernalillo, 944 F.2d 710, 718 (l0th Cir. 1991) ("Defendants who are unsuccessful in having a lawsuit dismissed on qualified immunity grounds before trial may reassert the defense at trial or after trial.").

On the record before us, we are unable to determine the grounds for the jury's decision.  The jury verdict form was a general one.  The form instructed the jury only to declare the defendants "liable" or "not liable" on the use of excessive force claim. In addition, neither party placed a copy of the jury instruction in the record.  Therefore,

8

it is possible that the jury based its decision on qualified immunity. With that ambiguity lurking, the Heller rule does not foreclose the suit against the County.

### 2. The Excessive Force Claim

#### a. Failure to Train

As noted above, a plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. See Monell, 436 U.S. at 694. We hold that the plaintiffs have not produced sufficient evidence with regard to the second element to withstand the defendant's motion for summary judgment.

The plaintiffs argue that the County's failure to adequately train its officers on the use of deadly force and in dealing with mentally ill or suicidal persons satisfies the second element of the Monell test. Inadequate police training may, in some circumstances, result in constitutional liability for a municipality. However, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' . . . —can a city be liable for such failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989). Therefore, as the district court noted, in order for liability to attach to a municipality, the failure to train must amount to "deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388; see also Houston v. Reich, 932 F.2d 883, 888 (10th Cir. 1991)

9

(declaring municipality liable "[w]here there is essentially a complete failure to train, or training is so reckless or grossly negligent that future misconduct is almost inevitable.").

With the above principles in mind, we have said that in order to establish a municipality's liability for inadequate training on the use of force, a plaintiff must meet a four-part test. See Allen v. Muskogee, 119 F.3d 837, 841 (10th Cir. 1997), cert. denied, 118 S. Ct. 1165 (1998).

> [A] plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

Id. at 841-42.

The plaintiffs cannot satisfy the third element here. They contend that the County's policy on the use of deadly force reflects a deliberate indifference towards Mr. Meyers because it authorized officers to use deadly force where such force is in fact constitutionally prohibited. We reach the opposite conclusion. The relevant portions of the policy are in accord with constitutional standards, making it impossible to conclude that the policy reflects a deliberate indifference to constitutional rights. The most relevant provision states that officers may use deadly force:

> To protect themselves or others when the deputies have probable

10

cause to believe that they or others are in danger of death or serious bodily harm and that the use of deadly force is reasonably necessary to protect themselves or others.

Appellants' App. Ex. J at 2. The evidence is undisputed that the officers did not resort to deadly force until they announced themselves as police and found Mr. Myers aiming his firearm in their direction. The County policy was well within constitutional bounds in authorizing the use of deadly force at that point. See Tennessee v. Garner, 471 U.S. 1, 11 (1985) (stating that deadly force may be used if an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others"); Romero v. Board of County Comm'rs, 60 F.3d 702, 704 (10th Cir. 1995) ("An officer's use of deadly force in self-defense is not constitutionally unreasonable."), cert. denied, 116 S. Ct. 776 (1996). There is no reasonable inference that the relevant portion of the County policy demonstrated a "deliberate indifference" to the rights of Mr. Myers and others in his situation.

The plaintiffs' stronger argument is that the moving force behind the alleged constitutional violation was not the County's policy on force, but the minimal amount of training on dealing with armed persons who are suicidal, mentally ill, and/or substance abusers. The plaintiffs argue that the County's lack of a policy on handling situations involving armed suicidal or mentally ill persons demonstrated a deliberate indifference towards those persons, and the lack of a policy led the officers to unreasonably enter the apartment and create the need to use force against Mr. Myers.

11

The record, however, does not create a reasonable inference that the County's policy, or lack thereof, on dealing with armed, suicidal persons amounts to deliberate indifference towards those persons. The record contains the County's voluminous training materials relating to the mentally ill, portions of which deal with suicide prevention and substance abuse. See Appellants'. App. Ex. K. Furthermore, contrary to the plaintiffs' assertions, the training records of the officers involved in this incident demonstrate that they received training in this area. See Appellants'. App. Ex. M (training records). The plaintiffs submitted no evidence demonstrating that the County's policy showed deliberate indifference towards mentally ill or suicidal persons. The only evidence to that effect in the record before us is a deposition of the plaintiffs' expert, which was not before the district court when it made its decision on summary judgment. In reviewing a grant of summary judgment, we do not consider materials not before the district court. See John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir. 1994).

b. Actions of Sheriff Sharp as County Policy

The plaintiffs make one brief additional argument that County policies are responsible for the alleged constitutional harm to Mr. Myers. According to the plaintiffs, the actions and directives of Sheriff Sharp represented County policy, and therefore the County is liable for the constitutional harm that arose from his actions. It is true that "municipal liability under § 1983 attaches where . . . a deliberate choice to

12

follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); id. at 481 ("If the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.").

The defendants do not deny that Sheriff Sharp, as the supervising law enforcement officer, was a final policymaker with respect to the decision to enter the apartment. See id. at 483 n.12 (offering sheriffs as examples of official policymakers with respect to law enforcement activities). Thus, there is no dispute in this case that the County, through Sheriff Sharp, was the "moving force" behind the decision to enter the apartment. If that decision—the decision to enter the apartment—resulted in a constitutional violation, the County would be liable. The decision to enter the apartment itself—as opposed to the decisions that occurred once the officers were inside the apartment, which the Sheriff did not direct and for which the County is not responsible—cannot be the basis of an excessive force claim in this case.

All claims of excessive force are "analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989). The pertinent question is whether Sheriff Sharp's decision to order the officers into the apartment was objectively

13

reasonable in light of the facts and circumstances confronting them. See id. at 397.

"The excessive force inquiry includes not only the officers' actions at the moment that

the threat was presented, but also may include their actions in the moments leading up

to the suspect's threat of force." Allen at 119 F.3d at 840. We must therefore

determine whether the facts support an inference that the decision to enter the

apartment unreasonably created the need to use such force. See Sevier v. City of

Lawrence, 60 F.3d 695, 699 (10th Cir. 1995); see also Alexander v. City and County of

San Francisco, 29 F.3d 1355, 1366-67 (9th Cir. 1994) (analyzing claim of excessive

force). In doing so, we bear in mind that actions leading to a confrontation, such as the

decision to enter the apartment, must be more than merely negligent to be

"unreasonable" for purposes of the Fourth Amendment inquiry. See Sevier, 60 F.3d at

699.

The decision to enter the apartment was reasonable as a matter of law. The

officers had spent hours attempting to resolve the situation through non-confrontational

communication with Mr. Myers, to no avail. They had secured a court order

authorizing them to take Mr. Myers into protective custody. They entered the

apartment in order to execute that order. These factors all point to the reasonableness

of their conduct. Cf. Medrano v. City of Los Angeles, 973 F.2d 1499, 1504 (9th Cir.

1992) (finding officer's decision to enter a bathroom reasonable where the person

inside was suffering from drug overdose, he could not be talked into leaving, and he

14

was apparently unconscious at the time of entry). There is no evidence in the record to suggest the decision to enter was an instance of the use of excessive force.

B.      The Eighth Amendment Claim

In addition to the Fourth Amendment arguments, the plaintiffs also allege that the County violated the Eighth Amendment by failing to provide attention to Mr. Myers's serious medical needs. In the context of a prison setting, the Eighth Amendment right to medical care is violated if (1) prison officials manifest a deliberate indifference to an individual's medical needs, and those needs are serious. See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Although the Eighth Amendment applies only to convicted inmates, the Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates. See Martin v. Board of County Comm'rs, 909 F.2d 402, 406 (10th Cir. 1990). Even assuming that Mr. Myers was a "pretrial detainee" and that Eighth and Fourteenth Amendment standards were violated by the officers in this case, summary judgment in favor of the County nonetheless was appropriate.

As we noted above, in order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation. See City of Canton, 489 U.S. at 385. The record is simply devoid of any

15

evidence showing that a County policy was the moving force behind the alleged constitutional violation. Thus, we affirm the district court's grant of summary judgment on the Eighth Amendment claim.

### III.    State Tort Claims

In addition to filing claims for relief under section 1983, the plaintiffs also sued the County for violations of Oklahoma state tort law. The district court found that the County was immune from tort liability under various provisions of the Oklahoma Governmental Tort Claims Act, OKLA. STAT. ANN. tit. 51, § 155 (West Supp. 1997). The plaintiffs' appeal of this decision presents a question of statutory interpretation that we review de novo. See Duke v. Department of Agriculture, 131 F.3d 1407, 1409 (10th Cir. 1997) (reviewing question of government immunity under the Federal Tort Claims Act de novo). We agree with the district court that at least one provision of the Oklahoma Tort Claims Act provides immunity for the County. Therefore, we uphold the district court's decision.

> The relevant provision of the Oklahoma Tort Claims Act provides that:
>
> The state or a political subdivision shall not be liable if a loss or claims results from:
> . . .
> (6) . . . the failure to provide, or the method of providing, police, law enforcement or fire protection.

OKLA. STAT. ANN. tit. 51, § 155(6) (West Supp. 1997). The Oklahoma Supreme Court recently addressed the same situation presented in this case and held that immunity

16

attaches. In <u>Schmidt v. Grady County</u>, 943 P.2d 595, 597-98 (Okla. 1997), a police officer took a woman into custody in order to prevent her from harming herself or others. The officer placed the woman in his patrol car. The officer did not restrain the woman with a seatbelt or handcuffs, and on the way to the station the woman sustained injuries when she either jumped or fell from the police car. <u>See id.</u> at 596. The woman sued in federal district court, and the district court certified the following question to the Oklahoma Supreme Court:

> Does Section 155(6) of Title 51 of the Oklahoma Statutes immunize a political subdivision from liability for damages for personal injuries an individual sustained as a result of a negligent act or omission of the political subdivision's law enforcement personnel while acting within the scope of their employment in taking the individual into protective custody and transporting her to county jail?

<u>Id.</u> at 596. <u>Grady</u> answered the question affirmatively, holding that under section 155(6) a county is immune from liability arising from the negligent acts of its employees in taking individuals into protective custody. <u>See id.</u> at 598. In this case, as in <u>Grady</u>, we are concerned with an act committed by law enforcement personnel while attempting to take an individual—Mr. Myers— into protective custody. <u>Grady</u> is indistinguishable from this case, and its holding controls us here. Therefore, even if the officers had committed the alleged torts, the County would be immune under <u>Grady</u>.

17

## Conclusion

The evidence in this case provides no reasonable basis for determining that County policies caused the alleged constitutional injuries of Mr. Myers. Furthermore, Oklahoma's Governmental Tort Claims Act immunizes the County from tort liability for the officers' actions in the death of Tom Myers.

We AFFIRM.