**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEAN F. TRIGALET; MYRA J.
TRIGALET, Personal Representatives
of the Estate of Constance Trigalet,

    Plaintiffs-Appellees,

v.

CITY OF TULSA, OKLAHOMA,
a municipal corporation,

    Defendant-Appellant.

No. 98-5261

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 92-CV-368)**

Submitted on the briefs:

Andrew C. Clarke of Bailey & Clarke, Memphis, Tennessee, for
Plaintiffs-Appellees.

David L. Pauling, City Attorney, and Michael C. Romig, Senior Asst.
City Attorney, Tulsa, Oklahoma, for Defendant-Appellant.

Before **EBEL** , **LUCERO** , and **MURPHY** , Circuit Judges.

**EBEL** , Circuit Judge.

This interlocutory appeal is before us on our grant of review under

28 U.S.C. § 1292(b). [1]  Specifically, the following controlling question of law

was certified to this court:

> whether, under the rationale of  Williams v. City & County of Denver ,
> 99 F.3d 1009 (10th Cir. 1996), [  op. vacated , 140 F.3d 855 (10th Cir.
> 1997), and  j. vacated & case remanded , 1998 WL 380518 (10th Cir.
> June 26, 1998)], a municipality can be held liable if the City's
> actions can be characterized as arbitrary, or conscience-shocking, in
> a constitutional sense, even if there are no unconstitutional acts by an
> individual officer.

We answer this question in the negative.  For purposes of this appeal the

facts are not in dispute and are taken from the district court's orders of

August 27, 1997 (denying summary judgment for defendants) and August 17,

1998 (denying in part and granting in part defendants' renewed motion for

summary judgment and directing preparation of request for interlocutory appeal).

These facts are summarized as follows.

In May of 1990, Constance Trigalet, Martha Annette Trigalet, and Steven

Munson were killed when a GMC Safari Minivan struck their Ford Escort station

wagon.  The minivan had run a red light while being pursued by members of the

Tulsa Police Department (hereinafter "TPD").  The sole reason for the police

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

pursuit was for a stolen vehicle offense. There was no information that the suspects in the fleeing van had committed any violent felony or were known for violent behavior.

The minivan ran at least eight stop signs as one of the officers pursued it through residential areas of central Tulsa, passing a high school, a park and coming within blocks of the University of Tulsa. This portion of the pursuit involved speeds in excess of sixty to sixty-five miles per hour, with the fleeing van traveling through stop signs at major intersections at between forty and fifty miles per hour without slowing. The officers were aware of the likelihood of encountering traffic during the pursuit. No supervisor or watch commander was notified of the pursuit, nor was the pursuit supervised, although the TPD's written vehicle pursuit policy then in force required that all pursuits be supervised and directed officers to terminate such pursuits when the hazards outweigh the benefits.

The training director for the TPD at the time of the accident testified that officers received the following training on high-speed pursuits: (1) twenty-four hours of hands-on training regarding the mechanical operation of a vehicle; and (2) some additional amount of training on the philosophy of pursuits, the specifics of which he did not recall. The manager of safety and equipment for the TPD at the time of the accident testified that it was appropriate to chase any traffic

-3-

offender no matter what the offense. Officers are trained to use due caution and common sense in evaluating pursuits. Due to the discretionary nature of the pursuit policy, unless a supervisor discontinues a chase, the decision to terminate a chase is solely up to the officer. From 1985 through 1990, seven officers were disciplined for pursuit policy violations. All of the violations dealt with technical violations of the pursuit policy and not the decision to initiate, continue, or terminate a pursuit.

Plaintiffs brought this 42 U.S.C. § 1983 action against a number of defendants, including the City of Tulsa. Summary judgment for defendants was entered in March of 1993. Plaintiffs both appealed and filed a motion for reconsideration. This court dismissed the first appeal in August of 1993. The district court then granted the motion for reconsideration and vacated part of its earlier dismissal. Specifically, the district court reinstated the case against the three officers who had participated in the chase. The officers then appealed, claiming the district court erred in denying them qualified immunity. We determined that the officers were entitled to qualified immunity, holding that it was not clearly established in May of 1990 that a police officer could be liable under § 1983 for an injury caused by a third party. See Trigalet v. Young , 54 F.3d 645, 648 (10th Cir. 1995) (reversing judgment of district court denying defendant officers' motion for summary judgment).

Plaintiffs then moved to revise the court's order dismissing the City, which was granted, thereby reinstating the action against the City. Tulsa then filed a motion for summary judgment, which was initially denied. However, all proceedings were stayed pending the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Plaintiffs had alleged that five elements of the TPD's policies and practices violated the constitutional rights of the decedents:

1. TPD failed to maintain records regarding prior pursuits which illustrates its lack of concern for the potentially fatal results of these pursuits;

2. TPD failed to adopt a policy which places meaningful restraints on officers regarding the institution, continuation and termination of pursuits;

3. TPD failed to properly monitor and supervise pursuits, leaving all pursuit decisions to highly-emotional, adrenalin-charged officers instead of allowing objective supervisory officers to make decisions concerning high-speed pursuits;

4. TPD failed to adequately train its officers with respect to the philosophy of pursuits including the justification for initiating, continuing and terminating pursuits; and

5. TPD failed to hold officers accountable for improper decisions to initiate, continue and terminate a pursuit.

Following the Supreme Court's decision in Lewis, in its August 1998 order, the district court granted summary judgment to Tulsa on plaintiffs' indirect, or derivative, liability claim. The court denied Tulsa's motion for summary judgment as to plaintiffs' theory that Tulsa could be liable based on its own policies and practices, holding that under the original panel decision in Williams, the city might be directly liable if its actions could be characterized as arbitrary or conscience shocking. The court specifically concluded that even though this court had vacated the Williams opinion, "its distinction between direct and indirect municipal liability is still valid and persuasive," and that there existed disputed issues of fact regarding whether the policies and practices of the Tulsa Police Department, by themselves, had violated plaintiffs' rights. This appeal followed.

## I.

Williams was also a high-speed police case, resulting in the death of an innocent motorist caused when the speeding officer, who was not in actual pursuit of a suspect but was responding to a request for backup from a fellow officer, ran a red light and crashed into Ms. Williams' son's car. She sued the officer and the city under 42 U.S.C. § 1983, claiming the defendants had violated her son's constitutional right to substantive due process. The claims against the city were based both on the city's alleged deliberate indifference to the need to institute

training, supervision and discipline procedures with respect to emergency driving and on its own conduct in hiring and training the officer. Williams, 99 F.3d at 1013. The district court determined as a matter of law that the officer's conduct was not unconstitutional and that therefore the city's policies and procedures could not give rise to municipal liability based on the officer's conduct. Id. The court also held that the city could not be held liable based on its own conduct absent a constitutional violation by the officer. Id. We reversed, holding that the evidence would support the conclusion that the officer's conduct was unconstitutional and that the city might be held liable for that conduct. See id. We further held in light of governing Supreme Court authority that "the City may be held liable for its own conduct even absent unconstitutional conduct by [the officer]." Id. We concluded, however, that the evidence was insufficient "to send the issue of the City's direct liability to the jury." Id.

On petitions for rehearing, we vacated the opinion in Williams and directed rehearing en banc to address the following questions:

1.    What standard determines whether the conduct of the officer in this case violated the constitutional rights of the plaintiff's decedent?

2.    Applying that standard, is the ultimate determination of whether the constitution was violated by the officer's conduct to be made by the court or by a jury?

3.    May the municipality be found liable for violating the constitutional rights of the plaintiff's decedent by its

> own conduct or policies in hiring and/or failing to train Officer Farr, even if the officer's conduct did not violate the constitutional rights of decedent?

Williams v. City & County of Denver, 140 F.3d 855 (10th Cir. 1997).

We later abated the appeal pending a decision by the Supreme Court in a factually similar case. We then vacated the district court's judgment and remanded Williams to that court for further proceedings in light of Lewis and Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997). See Williams v. City & County of Denver, No. 94-1190, 1998 WL 380518, at **1 (10th Cir. June 26, 1998).

Lewis involved a high-speed police pursuit in which the police officer chased a speeding motorcycle driver, resulting in the death of the motorcycle passenger when the bike tipped over and the officer struck and killed the passenger. The Supreme Court granted certiorari to consider "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender?" Lewis, 523 U.S. at 836. Although Lewis did not involve an issue of municipal liability, the Court did examine the standard for judging alleged executive abuse of power violating a substantive due process right, concluding it is that which shocks the conscience. See id. at 846-48 and n.8. ("Thus, in a due process challenge to executive action,

the threshold question is whether the behavior of the governmental officer is so egregious that it may fairly be said to shock the contemporary conscience.") The Court further likened the high-speed police chase situation to that of a prison riot, holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under 42 U.S.C. § 1983." Id. at 854. Under this standard, the officer's actions did not shock the conscience. See id. at 855.

Brown involved an action by a plaintiff against a deputy sheriff who injured plaintiff when he used excessive force to remove her from the passenger side of a stopped vehicle. Plaintiff sued the county and the county sheriff, claiming liability based on the county sheriff's decision to hire the deputy. The claim against the sheriff was dismissed before trial, but the county stipulated that the sheriff was a policy maker regarding his department. See Brown, 520 U.S. at 401. The jury found the deputy liable for plaintiff's injuries based on his use of excessive force and the lack of probable cause to arrest her. See id. at 402. It also found the hiring and training policies of the county (as instituted by the sheriff as policy maker) so inadequate as to amount to deliberate indifference to plaintiff's constitutional needs. See id. The Supreme Court granted certiorari "to decide whether the county was properly held liable for [plaintiff's] injuries based on [the sheriff's] single decision to hire [the deputy]." Id.

The Court reiterated its requirement that a plaintiff seeking to impose § 1983 liability on a municipality must identify a policy or custom that caused plaintiff's injury. See id. at 403. It is not enough, however, that the plaintiff "identify conduct properly attributable to the municipality," id. at 404.

> The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id. (altered emphasis ours).

Key to the Court's discussion of the circumstances supporting municipal liability is that there be a violation of plaintiff's constitutional rights.

## II.

It is against the background of these cases that we consider whether a municipality can be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights. We conclude, based on Lewis and Brown, as well as decisions from this and other circuits, as discussed below, that a municipality cannot be held liable under these circumstances. See also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual

-10-

police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

In Webber v. Mefford, 43 F.3d 1340 (10th Cir. 1994), we considered a § 1983 action against a police officer and the City of Sapula for injuries caused when a fleeing suspect, pursued by the officer, collided with plaintiffs, causing severe injuries. We held that a police officer violates a bystanders' substantive due process rights only when the officer displays reckless indifference to the risk created and directs his actions toward the bystander. [2] We further held that "[a] claim of inadequate training, supervision, and [pursuit] policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised," id. at 1344-45.

We have recognized the need for a predicate constitutional violation in other contexts as well. In Myers v. Oklahoma County Board of County Commissioners, 151 F.3d 1313, 1316 (10th Cir. 1998), we acknowledged the well-established principle that a municipality cannot be liable under § 1983 for its

---

[2]     As previously explained, the reckless or deliberate indifference standard has since changed to conduct that shocks the conscience. See Lewis, 523 U.S. at 855; Childress v. City of Arapaho, 210 F.3d 1154, 1157 (10th Cir. 2000). We have also recognized that Lewis principles apply "whether the claimant is a police suspect or an innocent victim." See Childress, 210 F.3d at 1157-58; Radecki v. Barela, 146 F.3d 1227, 1232 (10th Cir. 1998) (holding deputy not constitutionally liable for death of innocent bystander where deputy did not intend to harm victim).

employees' actions (here, excessive force) "if a jury finds that the municipal employee committed no constitutional violation." [3]

Support for our position is found in the decisions of our sister circuits as well. See, e.g. , Evans v. Avery , 100 f.2d 1033, 1039-40 (1st Cir. 1996) (following holding in Heller that absent constitutional violation by officer, city cannot be held liable); S.P. v. City of Takoma Park, Md. , 134 F.3d 260, 272 (4th Cir. 1998) (assuming training of officers was unconstitutional, city could not be held liable where no constitutional violation by officers had occurred); Temkin v. Frederick County Comm'rs , 945 F.2d 716, 724 (4th Cir. 1991) (claim that commissioners failed to adopt adequate policies governing training and supervision of officers' high-speed pursuits could not be made out absent constitutional violation by officers); Scott v. Clay County, Tenn. , 205 F.3d 867, 879 (6th Cir.), cert. denied, 121 S. Ct. 179 (2000) (holding that conclusion no officer-defendant deprived plaintiff of any constitutional right a fortiorari defeats claim against county); Claybrook v. Birchwell , 199 F.3d 350, 361 (6th Cir. 2000) (same); Estate of Phillips v. City of Milwaukee , 123 F.3d 586, 596-97 (7th Cir. 1997) (determining that officers did not violate constitution in seizing plaintiff's

---

[3] In Myers , we were further concerned with the exception to the requirement for individual officer liability under circumstances where the jury could have returned its verdict for the officers based on qualified immunity. Under that circumstance, because the county was not entitled to qualified immunity, the suit could proceed against the court. Id. at 1317-18.

decedent mandated conclusion that neither City nor police chief could be held liable); Tesch v. County of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998) (where correctional officers at county jail did not violate constitution, county and county sheriff not liable); Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000) (municipality's liability for constitutional injury requires finding of individual officer liability on underlying claim); Roach v. City of Fredericktown, Mo., 882 F.2d 294, 298 (8th Cir. 1989) (for municipal liability to attach, there must first be underlying violation of plaintiff's constitutional rights by municipal employee); Kiser v. City of Huron, 219 F.3d 814, 816 (8th Cir. 2000) (plaintiff must first establish that officers' actions are unlawful before municipality can be held liable); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996) (since officers did not violate plaintiff's rights, it follows that claim against city under theory of inadequate custom or municipal custom lacks merit); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996) (holding public entity not liable for § 1983 under policy "that can cause constitutional deprivations when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff,"); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) (holding that although liability of municipalities does not turn on liability of individual officers, "it is contingent on a violation of constitutional rights"; where no constitutional violation occurred, municipality could not be held

-13-

liable); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (concluding that where officer's conduct in striking plaintiffs' vehicle at high speed did not cause constitutional violation, court would not inquire into county's policy and custom regarding patrol vehicle operation and training). But see Fagan v. City of Vineland, 22 F.3d 1283, 1291-92 (3d Cir.) (holding that "in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the constitution"), on reh'g en banc, 22 F.3d 1296 (1994). [4]

Here, the threshold issue is whether the action causing the harm (police pursuit resulting in death of innocent bystander) states a constitutional violation at all. Because there was no evidence that the officer intended to harm the decedents, Lewis dictates that no constitutional harm has been committed. Therefore, plaintiffs cannot meet the first prong of the test set forth in Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992) ("proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a

---

[4] Other courts have disagreed with the Fagan decision. See Evans, 100 F.3d at 1040; Thompson v. Boggs, 33 F.3d 847, 859 n.11 (7th Cir. 1994); Neal v. St. Louis County, 52 F. Supp. 2d 1090, 1096 (E.D. Mo. 1999), aff'd, 217 F.3d 955, 959 (8th Cir. 2000); Hildebrandt v. City of Fairbanks, 957 P.2d 974, 977-78 & n.7 (Alaska 1998). Further, it appears that a subsequent panel of the Third Circuit has questioned the Fagan panel's analysis. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1153 n.13 (3d Cir. 1995).

-14-

municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.").

Thus, even if it could be said that Tulsa's policies, training, and supervision were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation. See S.P., 134 F.3d at 272 (citing Brown, 520 U.S. at 404, for requirement that plaintiff show direct causal link between municipal action and deprivation of federal rights in order to hold municipality liable under § 1983). See also Heller, 475 U.S. at 799 (holding that where plaintiff has not suffered constitutional injury at the hands of individual police officer, fact that departmental regulations might have *authorized* use of constitutionally excessive force is "quite beside the point") (emphasis in original); Kiser, 219 F.3d at 816 (holding "when a § 1983 plaintiff seeks to hold a municipality liable based on its alleged inadequate training and supervision of its police officers[,] . . . that plaintiff must first establish that the officers' actions were unlawful"); Quintanilla, 84 F.3d at 355 (public entity not liable even if policy could potentially cause constitutional deprivations where factfinder concluded individual officer inflicted no constitutional harm in this instance).

In sum, we hold that absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no

municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants.

Accordingly, the district court's order denying the City of Tulsa's motion for summary judgment on plaintiff's claim of direct liability is REVERSED, and we REMAND with directions to the district court to enter summary judgment for the City of Tulsa as to that claim. We express no opinion as to the grant of summary judgment to the City of Tulsa on plaintiffs' claim of indirect liability based on the alleged unconstitutional actions of the police officers, as that determination is not part of this appeal.