

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-8-2002

# Brown v. Comm PA Emergency

Precedential or Non-Precedential: Precedential

Docket No. 01-3234

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Brown v. Comm PA Emergency" (2002). *2002 Decisions.* Paper 486.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/486

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 8, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3234

CHARMAINE BROWN; ORAL DOUGLAS, in their
individual capacities and as Administrators of the Estate
of Shacquiel A. Douglas

        Appellants

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF
HEALTH EMERGENCY MEDICAL SERVICES TRAINING
INSTITUTE; CITY OF PHILADELPHIA; MARK STEWART,
individual and official capacity; JOHN CAFFEY, individual
and official capacity

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 99-cv-04901)
District Judge: The Honorable Herbert J. Hutton

Argued April 18, 2002

Before: NYGAARD, AMBRO, and KRAVITCH,*
Circuit Judges.

(Filed: August 8, 2002)

_____

* Honorable Phyllis A. Kravitch, Circuit Judge for the United States
Court of Appeals for the Eleventh Circuit, sitting by designation.

        David J. Berney, Esq. (Argued)
        Nancy G. Rhoads, Esq.
        Sheller Ludwig & Badey
        1528 Walnut Street, 3rd Floor
        Philadelphia, PA 19102
         Counsel for Appellants

        Jane L. Istvan, Esq. (Argued)
        Richard G. Feder, Esq.
        City of Philadelphia Law Department
        1515 Arch Street, One Parkway
        Philadelphia, PA 19102
         Counsel for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge:

This civil rights lawsuit arises out of the tragic death of Appellants' one-year-old son after choking on a grape. The District Court granted summary judgment for the City because there was no genuine issue of material fact, and it concluded that deliberate indifference by city policymakers had not been shown. The District Court also granted summary judgment for Stewart and Caffey because it concluded that the federal claim was barred by a prior state judgment. Because there is no constitutional right to rescue services, competent or otherwise, Appellants have failed to state a constitutional claim, and we will affirm.

I.

Shacquiel Douglas, the one-year-old son of Appellants Charmaine Brown and Oral Douglas, was at the residence of Angela Morris, his maternal aunt. While there, Shacquiel choked on a grape. Morris dialed "911" at 11:06:22 a.m. and informed the operator that her nephew was choking on a grape. The 911 operator called Appellees Mark Stewart and John Caffey, who were emergency medical technicians ("EMTs") at Engine 73, Fire House at 76th Street and

Ogontz Avenue in Philadelphia. The operator then informed Morris that "[r]escue is gonna come help you." At approximately 11:10:24 a.m., Morris again called 911 to determine when the EMTs would arrive. Morris was informed that "[r]escue was on the way." At approximately 11:14:50 a.m., when the EMTs still had not arrived, Morris placed a third call to the 911 operator and was again told that help was on the way.

Stewart and Caffey arrived at Morris's residence at approximately 11:16:35 a.m., which is about ten minutes after the initial 911 call had been placed. They transported Shacquiel to Germantown Hospital and tried to restore Shacquiel's breathing during the trip. Once at the hospital, the grape was removed from Shacquiel's throat. He was then transferred to St. Christopher's Hospital for Children where he died two days later due to "asphyxia by choking."

Appellants filed a civil complaint in the Court of Common Pleas of Philadelphia County against Stewart and Caffey alleging a state tort cause of action based on the same facts as their federal claim. The Court of Common Pleas granted Stewart and Caffey's motion for summary judgment and dismissed all claims against them.

Then, Appellants, in their individual capacities and as administrators of Shacquiel's estate, filed a civil rights lawsuit under 42 U.S.C. S 1983 against the City of Philadelphia, and Stewart and Caffey in their individual and official capacities.1 Count I of the Complaint asserts a S 1983 claim against Stewart and Caffey for alleged violations of their son's life, liberty, personal security, and bodily integrity without due process of law in violation of the Fourteenth Amendment and for deprivation of their

son's rights, privileges, and immunities secured by the laws and Constitution of the Commonwealth of Pennsylvania. Count II asserts a S 1983 claim against the City for violations of the Commonwealth Constitution and the Fourth and Fourteenth Amendments. The claims arising

---

3

under the Commonwealth Constitution and the Fourth Amendment were dismissed, so only the Fourteenth Amendment claim remained.

The District Court granted the City of Philadelphia's motion for summary judgment because it found that Appellants had failed to raise a genuine issue of material fact and because Appellants had not shown "deliberate indifference" by City policymakers. Brown v. City of Philadelphia, No. CIV.A. 99-4901, 2001 WL 884555, at *6 (E.D. Pa. July 31, 2001). The District Court also granted Stewart and Caffey's motion for summary judgment because it concluded that Appellants' federal lawsuit against Stewart and Caffey was barred under principles of claim preclusion by the prior state court judgment. Id. at *10. It is from this order that Brown and Douglas now appeal.

We review grants of summary judgment de novo and apply the same test as the District Court. Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002). We may affirm the District Court on any basis which has support in the record. Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980).

II.

This case presents another example of a trend among plaintiffs who try to transmute their garden variety torts into cases of federal constitutional dimension. Here, parents of a deceased child are trying to hold liable the EMTs for their failure to save him, and the City for its failure to adequately train its EMTs. Appellants allege that 42 U.S.C. S 1983, and the substantive component of the Fourteenth Amendment's Due Process Clause, provide them a cause of action under the federal Constitution. Whether citizens have a constitutional right to receive competent rescue services is an issue that we have not addressed. We now conclude that the Constitution confers no such right.

A. No Duty to Rescue

The starting point for any discussion of a state's failure

4

to provide rescue services is DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), where the Supreme Court held that the Due Process Clause generally does not require the government to provide intervention or rescue services. Id. at 196-97. The facts in DeShaney were "undeniably tragic." Id. at 191. Joshua DeShaney's father had been awarded custody of the young boy in divorce proceedings. Id. Over a period of time, the Department of Social Services became aware that Joshua was being abused by his father. Id. at 192. A caseworker made visits to the DeShaney home, and noticed suspicious injuries to Joshua, which she recorded along with her belief that someone in the home was abusing Joshua, but she took no further action. Id. at 192-93. Eventually, Joshua's father beat the four-year-old child so severely that he suffered irreparable brain damage and will likely spend his entire life institutionalized. Id. If ever a set of facts cried out for intervention and protection from some person or entity, it was the facts in DeShaney. Nonetheless, the Supreme Court held that the State had no constitutional obligation to rescue Joshua DeShaney from his father's cruelty. [2]

The Court reached its decision by carefully examining the text and history of the Fourteenth Amendment's Due Process Clause. That clause provides:

> No State shall . . . deprive any person of life, liberty, or property, without due process of law.

The Court noted that when claimants such as Joshua DeShaney argue that they have been deprived of life or liberty by the state's failure to provide adequate protection, they are invoking the substantive component, rather than the procedural component, of the Due Process Clause. Id. at 195. That is, they argue not that they have been deprived of life or liberty without the State following adequate procedural safeguards, but rather that the State is categorically required to prevent harm in certain instances. Id.

---

[2] As in DeShaney, our reference to "State" and "government" "refers generically to state and local governmental entities and their agents." DeShaney, 489 U.S. at 195 n.1.

5

Looking to the constitutional text, the Court observed that

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or

> property without "due process of law," but its language
> cannot fairly be extended to impose an affirmative
> obligation on the State to ensure that those interests
> do not come to harm through other means.

Id. The Court also found no duty to protect or rescue in the history of the amendment. The Court noted that "the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.' " Id. at 196 (quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986)). The Clause was intended "to protect the people from the State, not to ensure that the State protected them from each other." Id. Since the State is not constitutionally required by the Due Process Clause to provide protective services, the Court found that there can be no liability when the State fails to provide such services, even if it would have prevented the private injury from occurring. Id. at 196-97.

1. "Special Relationship" Exception

Two exceptions to DeShaney's general rule that the State is not required to provide protective or rescue services have been recognized by the courts. The first was articulated by the Court in DeShaney and has been called the "special relationship" exception. The Court found that, although the State has no general obligation to provide protective services, "[i]t is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 198. The Court recognized that "when the State takes a person into its custody and holds him

there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200. This "special relationship" has been found in cases involving prisoners, pre-trial detainees, persons in police custody, and persons in mental institutions. See Collins v. City of Harker Heights, 503 U.S. 115, 127 (1992) (collecting cases). The Court has explained the rationale for the rule as follows:

> when the State by the affirmative exercise of its power
> so restrains an individual's liberty that it renders him
> unable to care for himself, and at the same time fails
> to provide for his basic human needs--e.g., food,
> clothes, shelter, medical care, and reasonable safety--it
> transgresses the substantive limits on state action set
> by the Eighth Amendment and the Due Process
> Clause. The affirmative duty to protect arises not from
> the State's knowledge of the individual's predicament
> or from its expressions of intent to help him, but from
> the limitation which it has imposed on his freedom to
> act on his own behalf.

Id. at 200 (citations omitted).

## 2. State-Created Danger Exception

The other exception to DeShaney's general rule that the State has no affirmative constitutional obligation to protect or rescue is called the "state-created danger" exception and involves situations where the State caused the harm or made someone more vulnerable to an existing harm. This exception was not clearly defined by the Court in DeShaney, but has been developed by the inferior courts based upon the Court's statement in DeShaney that

> [w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of

7

> an individual's safety by having once offered him shelter.

Id. at 201.

We adopted the state-created danger theory of liability in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996). To state a claim for a civil rights violation under the state-created danger theory, a plaintiff must show: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actors' conduct "shocks the conscience"; (3) there existed some relationship between the State and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party to cause harm. Id. at 1208 (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995)); County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (recognizing that the "shocks the conscience" standard is the appropriate measure for evaluating executive abuses of power). The "relationship" required by the third element of this test is different than the "relationship" in the "special relationship" exception to DeShaney discussed above. In the context of the state-created danger theory, the "relationship" requirement implies that there was contact between the parties such that the plaintiff was a foreseeable victim in the tort sense. Kneipp, 95 F.3d at 1209 n.22. On the other hand, the "relationship" which is part of the "special relationship" exception embodies a custodial element because the State has deprived the individual of the liberty necessary to care for himself. Id.

## B. No Duty to Provide Competent Rescue Services

It is hornbook tort law that although an individual

generally has no duty to rescue, once voluntarily undertaken, a rescue must not be performed negligently. See Restatement (Second) of Torts SS 314, 323 (1965). One might infer from the general rule that, although the State is not constitutionally required to provide rescue services, once the State undertakes a rescue, it must do so competently as a matter of federal constitutional law. Such an inference, however, incorrectly conflates state tort law

and federal constitutional law. The Supreme Court has repeatedly stated that "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." DeShaney, 489 U.S. at 202 (collecting cases). Although state tort law might provide a remedy for a state's negligent rescue attempt, it neither logically nor legally follows that federal constitutional law must do the same.

We have not decided whether the Due Process Clause requires states to provide adequate or competent rescue services when they have chosen to undertake these services. Other appellate courts addressing this question have held that states have no constitutional obligation to provide competent rescue services. See Salazar v. City of Chicago, 940 F.2d 233, 237 (7th Cir. 1991) ("Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody."); Bradberry v. Pinellas County, 789 F.2d 1513, 1517 (11th Cir. 1986) ("The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts nor even the grossly negligent training of state officers."); see also Archie v. City of Racine, 847 F.2d 1211 (7th Cir. 1988) (en banc); Jackson v. City of Joliet, 715 F.2d 1200 (7th Cir. 1983).

We too now hold that there is no federal constitutional right to rescue services, competent or otherwise. The Due Process Clause does not require the State to provide rescue services, so it would be nonsensical to try to interpret that clause to place an affirmative obligation on the State to provide competent rescue services if it chooses to provide those services at all. Plaintiffs might argue that because the Fourteenth Amendment prohibits the State from depriving him of life or liberty without due process, it follows that the State cannot deprive him of life or liberty by its negligence. This argument must fail, though, because the State played no part in the act -- feeding Shacquiel the grape-- that ultimately caused his death. The state's negligence, if there was any, was merely that it failed to interrupt the event which ultimately killed him.

III.

A. Stewart and Caffey

Appellants allege that EMTs Stewart and Caffey violated
their son's constitutional rights in that: (1) Stewart and
Caffey failed to "exercise the well-established and
universally recognized protocols for choking situations"; (2)
neither Stewart nor Caffey attempted to "reach down and
directly" remove the grape from Shacquiel's throat; (3)
Stewart and Caffey did not arrive at the Morris residence in
a more timely manner because they could not locate
Weaver Street on the station map; (4) when Stewart and
Caffey left the station house to look for the Morris
residence, they were lost; and (5) Stewart and Caffey were
never provided "information on the neighborhood in which
they were responsible for providing emergency services,"
and they failed to familiarize themselves with the
neighborhood. Brown, 2000 WL 562743, at *1.

The District Court awarded summary judgment to
Stewart and Caffey because it concluded that Appellants'
federal suit was barred by the prior state court action,
which Appellants filed and lost. Appellants now argue that
the District Court's application of res judicata was
incorrect. We need not decide that issue because, as we
explained above, Shacquiel Douglas had no constitutional
right to be rescued from choking on a grape, nor did he
have a constitutional right to be provided with competent
rescue services if rescue was undertaken at all. That is the
general rule of DeShaney and its progeny. Additionally,
neither of the two exceptions to DeShaney apply.

First, the "special relationship" exception does not apply.
That exception only applies "when the State takes a person
into its custody and holds him there against his will."
DeShaney, 489 U.S. at 199-200. Shacquiel Douglas was not
in the state's custody nor was he held against his will. This
is not a case where "the State by the affirmative exercise of
its power so restrains an individual's liberty that it renders
him unable to care for himself." Id. at 200.

Second, Appellants argue the "state-created danger"
exception applies. In an attempt to state a claim under this

10

theory of liability, they followed the elements of the test we
set forth in Kneipp in alleging:

> (a) [Stewart and Caffey's] actions created foreseeable
> and fairly direct harm to the decedent and the
> plaintiffs; (b) their actions evidenced willful disregard of
> harm to the decedent and the plaintiffs; (c) a
> relationship existed between the parties; and (d) their
> actions created and/or increased a danger to the
> decedent that otherwise would not have existed.

Compl. at P 36. We need to consider only one of the Kneipp
elements to understand why Appellants' state-created
danger claim must fail. Appellants allege that Stewart and

Caffey's actions "created and/or increased a danger to the decedent that otherwise would not have existed." This is incorrect. The danger facing Shacquiel Douglas was a grape that was stuck in his throat. Neither the Commonwealth nor the city nor Stewart and Caffey had anything to do with that; the danger already existed when Stewart and Caffey arrived on the scene. Although Stewart and Caffey may have failed to rescue Shacquiel successfully from that pre-existing danger, we have already said that they had no constitutional obligation to do so. We will, therefore, affirm the District Court's award of summary judgment to Stewart and Caffey.

B. City of Philadelphia

Appellants also allege that the City of Philadelphia violated Shacquiel's constitutional rights under the"policy or custom" theory of S 1983 municipal liability. A municipality may be held liable if a constitutional violation was caused by action taken pursuant to a municipal policy or custom. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978). But a municipality cannot be liable solely as an employer because there is no respondeat superior theory of municipal liability in S 1983 actions. Id. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under S 1983." Id. at 694.

11

The Supreme Court has recognized that "under certain circumstances" a municipality may be liable underS 1983 for a failure to adequately train its police officers. City of Canton v. Harris, 489 U.S. 378, 380 (1989). The first question in any case alleging municipal liability for a failure to train is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Id. at 385. Furthermore"the inadequacy of police training may serve as the basis for S 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388.

We have held it is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable. Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994).3 In Fagan we held "that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." Id. at 1294. However, for there to be municipal liability, there still must be a violation of the plaintiff 's constitutional rights. Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (emphasizing "the separate character of the inquiry into the question of municipal responsibility and the question

whether a constitutional violation occurred."). It is not enough that a municipality adopted with deliberate indifference a policy of inadequately training its officers.

---

3. We note that there is a split among the courts of appeals on this issue. Some courts have explicitly rejected our holding in Fagan. See Trigalet v. City of Tulsa, 239 F.3d 1150, 1154-55 (10th Cir. 2001), cert. denied, 122 S. Ct. 40 (2001); Young v. City of Mount Ranier, 238 F.3d 567, 579 n.9 (4th Cir. 2001); Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996); Thompson v. Boggs, 33 F.3d 847, 859 n.11 (7th Cir. 1994). One panel of this court has even questioned the panel opinion in Fagan. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1153 n.13 (3d Cir. 1995). But other courts have agreed with our opinion in Fagan. See Fairley v. Luman, 281 F.3d 913 (9th Cir. 2002), petition for cert. filed, 71 U.S.L.W. 3021 (U.S. June 24, 2002) (No. 01-1882). This debate has no bearing upon the present case, however, because we find no constitutional violation by either the City or its employees.

12

There must be a "direct causal link" between the policy and a constitutional violation. Canton, 489 U.S. at 385.

This is where Appellants' municipal liability claim fails. They allege that the City of Philadelphia had a number of policies involving EMTs which were enacted with deliberate indifference and which caused harm to them and their son. Even if we accept everything Appellants allege as true, they will have still failed to establish that the City's policies caused constitutional harm. The City was under no constitutional obligation to provide competent rescue services. The failure of the City and its EMTs to rescue Shacquiel Douglas from privately-caused harm was not an infringement of Appellants' constitutional rights. 4 There has been no constitutional harm alleged. There can be no municipal liability under S 1983.

IV.

States are not constitutionally obligated to provide rescue services to their citizens, nor are they constitutionally required to provide competent rescue services when they voluntarily choose to undertake this task. Because Appellants have failed to state a violation of their federal constitutional rights, we will affirm the order of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

---

4. This case is different from our recent decision in Ziccardi v. City of Philadelphia, 288 F.3d 57 (3d Cir. 2002). The paramedics in that case allegedly rendered the plaintiff a quadriplegic by forcefully pulling him off the ground by his arms and throwing him over their shoulders. Id. at 59.

The allegation in Ziccardi was not that paramedics had failed to rescue the plaintiff from a pre-existing injury--as is the allegation in the present case--rather it was that the paramedics actually caused the injury in the first place.

13