**Michael C. HILDEBRANDT, Appellant
and Cross–Appellee,**

v.

**CITY OF FAIRBANKS, Appellee
and Cross–Appellant.**

Nos. S–7484, S–7554.

Supreme Court of Alaska.

May 1, 1998.

Rehearing Denied June 15, 1998.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for Appellant and Cross–Appellee.

Daniel E. Winfree, Winfree Law Office, Fairbanks, for Appellee and Cross–Appellant.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

EASTAUGH, Justice.

I. *INTRODUCTION*

A motorist was injured in a collision with a City of Fairbanks police car that was pursuing a fleeing arrestee's vehicle. We must decide here whether the City can be held liable under 42 U.S.C. § 1983 for failing to train its police officers in "pursuit driving." The superior court held that the City cannot

be held liable under § 1983 absent a constitutional violation by the police officer, and that the police officer's conduct did not violate the motorist's substantive due process rights. Because we agree with that reasoning, we affirm.

II. *FACTS AND PROCEEDINGS*

This case arises out of a 1990 accident in which a City of Fairbanks police car driven by Officer Perry Williamson struck a car driven by Michael Hildebrandt.[1] *Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 241 (Alaska 1993) (*Hildebrandt I*). Williamson had pulled over a car driven by Robert Malone in a routine traffic stop, and determined that Malone was driving with a revoked license. *Id.* When Williamson attempted to arrest him, Malone fled in his car at high speed. *Id.* Williamson activated the emergency lights and siren on his patrol car and pursued Malone's car. During the pursuit, Williamson's patrol car entered an intersection on a red light and struck Hildebrandt's vehicle. *Id.* at 242. Hildebrandt had been traveling within the speed limit and had entered the intersection on a green light. *Id.* Hildebrandt suffered serious injuries. *Id.*

In May 1990 Hildebrandt sued the City under both common law tort principles and 42 U.S.C. § 1983.[2] He based his § 1983 claim on the City's alleged failure to train its police officers adequately in vehicle pursuit.[3] *Id.* The City admitted prior to trial "that Williamson was negligent and that the City was responsible for some portion of Hildebrandt's damages." *Id.* The superior court then granted the City's motion for summary judgment on the § 1983 claim. *Id.*

**1.** This is Hildebrandt's second appeal relating to this collision. Our opinion in his first appeal discusses many of the facts germane here. *Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 241–42 (Alaska 1993) (*Hildebrandt I*).

**2.** 42 U.S.C. § 1983 (West 1997) provides, in part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**3.** Hildebrandt presented evidence indicating that, during the mid–1980s, the City of Fairbanks eliminated the position of training officer. Thus, police officers received little or no training in pursuit driving.

After a bench trial, the superior court found that "Hildebrandt, Williamson and Malone were all negligent and the negligence of each was a legal cause of the accident and resulting injuries sustained by Hildebrandt." *Id.* The superior court also found that the City was negligent in failing to train Williamson properly. *Id.* The court made the following allocation of fault: sixty percent to Malone, thirty-two percent to the City and Williamson, and eight percent to Hildebrandt. *Id.*

Hildebrandt appealed, arguing that the superior court erred in treating Malone as a separate party for purposes of apportioning fault, in finding that Hildebrandt was comparatively negligent, and in granting summary judgment on the § 1983 claim. *Id.* at 241–42. In *Hildebrandt I*, we affirmed the superior court's decision on the first two issues, but reversed the grant of summary judgment, finding that material issues of fact remained regarding the § 1983 claim. *Id.* at 243–44, 246. We remanded the § 1983 claim to the superior court for additional findings.[4] *Id.* at 246.

After a second bench trial, the superior court found that Officer Williamson's conduct did not shock the conscience and therefore did not violate Hildebrandt's Fourteenth Amendment substantive due process rights. The superior court also found that the City could not be held liable under § 1983 for its failure to train police officers in pursuit driving when there had been no constitutional

violation by the individual officer. It entered judgment against Hildebrandt.

Hildebrandt appeals. The City cross-appeals.

### III. DISCUSSION

#### A. Can the City Be Held Liable under § 1983 Absent a Constitutional Violation by an Employee?

Hildebrandt argues that the City can be held liable under § 1983 for failing to train its officers in pursuit driving even if the individual officer did not violate the Constitution.[5] Thus, Hildebrandt contends that the superior court erred in requiring him to prove that the officer's conduct shocked the conscience (i.e., violated the Constitution).[6]

A municipality is a "person" subject to liability under § 1983. *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality cannot, however, be held liable under § 1983 on a theory of vicarious liability; it can only be held liable when it was the wrongdoer. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The United States Supreme Court has explained:

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a munici-

---

**4.** We found that genuine issues of material fact existed

> as to (1) whether the City's pursuit driving training was inadequate; (2) whether such inadequate training can justifiably be said to represent City policy; (3) whether, as stated in *City of Canton*, 489 U.S. [378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)], "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [C]ity can reasonably be said to have been deliberately indifferent to the need"; and (4) whether the policy actually caused Hildebrandt's injuries.

*Hildebrandt I*, 863 P.2d at 246.

**5.** Hildebrandt also phrases his argument as "[d]irect municipal liability under § 1983 exists irre-

spective of whether individual officer *liability* exists." (Emphasis added.) Whether an officer has committed a constitutional violation is an issue wholly distinct from whether the officer may be liable for the violation. The City agrees that a municipality may be liable, even if the individual officer is not liable (because the officer is protected by qualified immunity, for example). The City, however, argues that the officer still must have committed a constitutional violation before the City may be liable under § 1983.

**6.** Constitutional issues present questions of law, which we review exercising our independent judgment. *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1241 (Alaska 1995). We also exercise independent judgment in reviewing a trial court's application of law to facts. *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992).

pality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell,* 436 U.S. at 691, 98 S.Ct. 2018 (emphasis omitted). A municipality may be directly responsible under § 1983 when an employee executes a governmental policy or custom that inflicts constitutional injury. *Id.* at 694, 98 S.Ct. 2018.

■ A municipality may face liability under § 1983 for "constitutional violations resulting from its failure to train municipal employees." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The United States Supreme Court, however, has carefully circumscribed municipalities' potential liability; not all possibly injurious failures to train will give rise to liability under § 1983. *Collins,* 503 U.S. at 123, 112 S.Ct. 1061. The Court has stated:

> [I]f a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. In particular, we held that the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to "deliberate indifference" to the rights of persons with whom the police come into contact.

*Id.* at 123–24, 112 S.Ct. 1061. Thus, a successful § 1983 claim for municipal liability for failure to train has several key elements: a plaintiff must show that his or her constitutional rights have been violated; the municipality must have had a policy (failure to train) that constitutes deliberate indifference to the plaintiff's constitutional rights; and the policy must have been the cause of the constitutional violation. *See Canton,* 489 U.S. at 389–90, 109 S.Ct. 1197; *Lewis v. Sacramento County,* 98 F.3d 434, 446–47 (9th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2406, 138 L.Ed.2d 173 (1997) (granting summary judgment to municipality on § 1983

claim arising out of police chase, but denying summary judgment to individual officer because genuine issue of material fact remained regarding whether officer violated plaintiffs' constitutional rights).

Hildebrandt, relying heavily on *Fagan v. City of Vineland,* 22 F.3d 1283, 1291–94 (3d Cir.1994), contends that the City can be held liable under § 1983 even in the absence of a constitutional violation by Williamson. In *Fagan* the United States Court of Appeals for the Third Circuit held that a municipality can be liable under § 1983 and the Fourteenth Amendment for failure to train officers in high-speed pursuit even if no officer involved in the chase violated the Constitution. *Id.* at 1294. The *Fagan* court reasoned that a city can be directly liable under § 1983 for injuries that resulted when an officer followed a city policy that the city policymakers implemented with deliberate indifference to the plaintiff's constitutional rights. *Id.* at 1292. An officer in such a situation merely serves as "the causal conduit for the constitutional violation by the City." *Id.* The individual officer would only be liable under § 1983 if his or her conduct shocked the conscience. *Id.*

Hildebrandt, therefore, reasons that the City's failure to train its officers in high-speed pursuit driving was a policy that amounted to deliberate indifference to the rights of people with whom the police come into contact; that the policy caused Hildebrandt's injuries; and that the City was directly liable for its own wrongdoing (failure to train), even if the conduct of the police officer was not unconstitutional.

■ We reject Hildebrandt's argument and believe that his reliance on *Fagan* is misplaced. The Third Circuit's approach appears to conflict with the United States Supreme Court's interpretation of § 1983 as set forth in *City of Canton* and *Collins.* Thus, we join the majority of the Courts of Appeals in declining to follow *Fagan.*[7] We hold that

---

7. The First, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have indicated that a municipality can only be liable for failure to train if the police officer violates the Constitution. *Evans v. Avery,* 100 F.3d 1033, 1039 (1st Cir.1996); *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir.1994);

*Thompson v. Boggs,* 33 F.3d 847, 859 (7th Cir. 1994); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364–65 (6th Cir.1993); *Medina v. City of Denver,* 960 F.2d 1493, 1499–500 (10th Cir.1992) (citing *Watson v. City of Kansas City, Kansas,* 857 F.2d 690, 697 (10th Cir.1988)); *Temkin v. Freder-*

a 42 U.S.C. § 1983 claim based on a municipality's failure to train requires an underlying violation of constitutional rights. Where a bystander is injured by a police car during a vehicle pursuit, the pursuing police officer must have violated the bystander's substantive due process rights in order for the bystander to allege a § 1983 claim.

■ Deliberate indifference on the part of the City in adopting inadequate training policies, without more, cannot sustain a substantive due process claim. If we allowed such a result, courts would become embroiled in evaluating municipalities' resource allocation decisions—a task for which the courts are ill-equipped. In addition, the Due Process Clause would become a guarantee of duties traditionally imposed by state tort law. The United States Supreme Court has cautioned courts against interpreting the Due Process Clause in that manner:

> Decisions concerning the allocation of resources to individual programs ... and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions."

*Collins,* 503 U.S. at 128–29, 112 S.Ct. 1061 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Therefore, we hold that Hildebrandt's § 1983 claim can only succeed if the police officer violated Hildebrandt's constitutional rights.

**B.** *Did Officer Williamson Violate Hildebrandt's Constitutional Rights?*

Hildebrandt contends that Officer Williamson's actions violated Hildebrandt's substantive due process rights under the Fourteenth Amendment. He does not identify any other possible constitutional violation. He argues that Williamson's conduct was "shocking," and that the court should find that it shocks the conscience, thereby amounting to a constitutional violation.

The Courts of Appeals have not reached consensus on what standard a plaintiff must satisfy in order to establish a substantive due process violation actionable under § 1983.[8] The Ninth Circuit, however, has found a unifying principle in the circuits' approaches: "These cases sen[d] a clear message that conduct that is sufficiently egregious may lead to § 1983 liability." *Lewis,* 98 F.3d at 444.

■ Hildebrandt reasons that Williamson's conduct was so egregious as to shock the conscience. Although other jurisdictions have sometimes applied other standards, the parties to this case have addressed only the

---

ick County Comm'rs, 945 F.2d 716, 724 (4th Cir.1991); Roach v. City of Fredericktown, 882 F.2d 294, 297–98 (8th Cir.1989).

A Third Circuit panel subsequently cast doubt on the continued vitality of Fagan v. City of Vineland, 22 F.3d 1283, 1293 (3d Cir.1994), in a more recent § 1983 case, in which the panel affirmed the lower court's grant of summary judgment for a municipality after finding no underlying constitutional violation. Mark v. Borough of Hatboro, 51 F.3d 1137, 1155 (3d Cir.), cert. denied, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). The panel observed, "It appears that, by focusing almost exclusively on the 'deliberate indifference' prong of the Collins [v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)] test, the panel opinion [in Fagan] did not apply the first prong—establishing an underlying constitutional violation." Mark, 51 F.3d at 1153 n. 13.

In a treatise on § 1983, one commentator explained the problem in Fagan: "the Third Cir-

cuit, after acknowledging that a substantive due process violation requires *conscience shocking* conduct, nevertheless concluded that the city could be liable merely for its *deliberate indifference* in failing to train its police officers." Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* § 6.07, at 274 (Supp.1996).

**8.** *See, e.g., Lewis v. Sacramento County,* 98 F.3d 434, 441 (9th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2406, 138 L.Ed.2d 173 (1997) (adopting standard of "deliberate indifference to, or reckless disregard for, a person's right to life and personal security"); *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 719, 723 (4th Cir.1991) (requiring conduct that shocks the conscience); *Jones v. Sherrill,* 827 F.2d 1102, 1106 (6th Cir.1987) (requiring grossly negligent or outrageous conduct); *Cannon v. Taylor,* 782 F.2d 947, 948–50 (11th Cir.1986) (reasoning that even grossly negligent conduct by police is not actionable under § 1983).

"shock the conscience" test.[9] The superior court concluded that "an individual police officer may be held liable under 42 U.S.C. § 1983 only if the officer's conduct 'shocks the conscience,' " and found that Williamson's actions did not satisfy that standard.

The superior court found that Williamson violated the Fairbanks Police Department's Standard Operating Procedure in several respects. Williamson "was negligent in failing to drive with regard for the safety of other persons," in failing to terminate pursuit once he knew Malone's identity, and in failing to maintain radio contact with his supervisor. The superior court found that, when Williamson entered the intersection, his emergency lights and siren were activated, but he "failed to use extreme caution when entering and going through [the intersection]." Hildebrandt argues that Williamson was traveling at about 45 miles per hour when he entered the intersection.

We must decide, then, whether Williamson's transgressions shock the conscience. Governmental conduct that "offend[s] ... canons of decency and fairness" or violates personal immunities that are "implicit in the concept of ordered liberty" may "shock the conscience" and thus violate one's due process rights. *Rochin v. California*, 342 U.S. 165, 169–72, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (quotations omitted).

Courts that have applied the *Rochin* standard to highspeed police pursuits have found that conduct more egregious than Williamson's did not shock the conscience. In *Temkin v. Frederick County Comm'rs*, 945 F.2d 716 (4th Cir.1991), for instance, a police officer engaged in a chase for ten miles at night along a two-lane highway near a busy carnival at speeds ranging from 65 to 105 miles per hour. *Id.* at 718, 723. The pursued motorist was suspected of stealing $17 worth of gas. *Id.* The police officer lost control of his car and hit the plaintiff's car broadside at approximately 60 miles per hour, inflicting "severe and permanent injuries" on the plaintiff. *Id.* The Fourth Circuit concluded that the officer's conduct, "while disturbing and lacking in judgment, [fell] short of the 'shocks the conscience' standard." *Id.* at 723.

The Eighth Circuit considered a highspeed chase in which a police officer pursued a suspect outside the officer's jurisdiction. *Roach v. City of Fredericktown*, 882 F.2d 294, 295 (8th Cir.1989). The suspect collided with an oncoming car, and the police car then collided with the debris from the first accident. *Id.* The two collisions caused the death of the suspect and injured two innocent persons in the oncoming car, as well as a passenger in the suspect's car. *Id.* The plaintiffs argued that the officer's conduct "shock[ed] the conscience." *Id.* at 297. The Eighth Circuit held that the officer's conduct was not grossly negligent and "most certainly [did] not rise to the level of conduct which would sustain a claim under section 1983." *Id.* at 297.[10] Thus, conduct during vehicle pursuits involving higher speeds than those claimed here, more serious harm, and more dangerous conditions has been held not to shock the conscience.

■ A state official's negligent conduct does not implicate the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States."

9. In his cross-appellee's brief, Hildebrandt argued for the first time that this court should use the "deliberate indifference or reckless disregard" standard set forth by the Ninth Circuit in *Lewis v. Sacramento County*, 98 F.3d 434, 441 (9th Cir.1996). Hildebrandt moved to amend the points on cross-appeal, asking the court to address the standard for § 1983 individual officer liability in light of *Lewis*. The court denied his motion on March 24, 1997.

10. Similarly, courts that have applied tests other than "shock the conscience" have also found conduct more egregious than Williamson's not to rise to the level of a substantive due process deprivation, regardless of the standard. *See, e.g., Jones v. Sherrill*, 827 F.2d 1102, 1104–07 (6th Cir.1987) (holding that police officer's nine-mile pursuit of suspect within city limits at speeds ranging from 120 to 135 miles per hour, which caused the death of an innocent driver, would not sustain a § 1983 claim); *Cannon v. Taylor*, 782 F.2d 947, 948–50 (11th Cir.1986) (holding that officer's pursuit did not rise to the level of a constitutional violation, where officer chased suspect at 46 miles per hour in 30 miles-per-hour zone, without sirens or lights, and killed an innocent driver).

*Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Thus, even though Officer Williamson's conduct was negligent, the record does not permit a conclusion that it shocks the conscience.[11]

## IV. *CONCLUSION*

 We hold that the City is not liable to Hildebrandt under § 1983 for failing to train Officer Williamson unless Williamson violated Hildebrandt's constitutional rights. Because Officer Williamson's conduct did not shock the conscience, we conclude that Hildebrandt did not suffer a constitutional violation. Therefore, we hold that the City cannot be held liable under § 1983 and AFFIRM the superior court judgment.

---

**11.** In its cross-appeal, the City argues that the superior court used improper legal standards for imposing municipal liability for failure to train, and that there was insufficient evidence to support the court's finding that the City was deliberately indifferent to its citizens' constitutional rights. Given our resolution of Hildebrandt's appeal, the issues raised on cross-appeal are moot.