# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 7, 2014        Decided September 2, 2014

No. 12-5290

RONNIE LEROY HOWARD,
APPELLANT

v.

CAUFIELD, WARDEN AND UNITED STATES PAROLE
COMMISSION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00211)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was *A.J. Kramer*, Federal Public Defender.

*Ronnie Leroy Howard*, pro se, filed briefs for appellant.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Carolyn K. Kolben*, Assistant U.S. Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, GRIFFITH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Ronnie Leroy Howard appeals the denial of his petition for a writ of habeas corpus. Howard is a federal parolee with an expected parole termination date of June 5, 2016.[1] He seeks immediate release from parole, contending that procedural irregularities relating to parole revocations in 1985 and 2004 warrant habeas corpus relief.

Howard makes three roughly distinct challenges to his federal parole. First, he argues that the U.S. Parole Commission ("Commission"), through a "Notice of Action" following a 1985 parole revocation hearing, ordered that the first five years of an intervening state sentence, from 1982 to 1987, would run concurrently with his federal sentence, but

---

[1] Effective November 1, 1987, the Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1837, 1999 (1984), "eliminated most forms of parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000) (citing *Gozlon-Peretz v. United States,* 498 U.S. 395, 400-01 (1991)); *see* 18 U.S.C. § 3583. Congress has extended the federal parole system seven times to allow the Commission to continue monitoring the handful of individuals, like Howard, who were sentenced for offenses committed before November 1, 1987, and who remain on federal parole. *See, e.g.*, United States Parole Commission Extension Act of 2013, Pub. L. No. 113-47, § 2, 127 Stat. 572 (2013) (extending parole through 2018). The primary difference between parole and supervised release is that the latter is an additional, independent term of supervision imposed at sentencing, whereas parole is granted to individuals already serving a term of confinement, allowing them to complete an existing sentence of incarceration outside of prison.

failed to treat them as concurrent. But for the Commission's failure to run his terms concurrently, as Howard says the Commission informed him it would, he would now be free from parole. Howard's claims arising out of that alleged surprise reversal fail because they all rest, at bottom, on a misreading of the admittedly opaque Notice of Action, which directed that the specified five years would run consecutively.

Second, Howard makes several arguments founded on his contention that the Commission did not properly execute, or never executed, a 1982 parole violator warrant it lodged against him. At the conclusion of the three day evidentiary hearing in this case, the magistrate judge found that the Commission executed the 1982 warrant on July 21, 1987. Howard argues, however, (1) that the magistrate judge's factual finding was clearly erroneous, (2) that the magistrate judge abused her discretion and violated his due process rights by failing to aid him in calling additional witnesses at the evidentiary hearing whose testimony could have helped him to prove that the Commission did not execute the warrant in 1987, and (3) that he received ineffective assistance of counsel because his attorney failed adequately to press his warrant execution argument and failed adequately to help him to locate and procure his witnesses. All of Howard's claims relating to the execution of his 1982 parole violator warrant fail, however, because Howard had no right to have the warrant executed, and the Commission had no obligation to execute it. It is thus immaterial whether the Commission ever executed the 1982 parole violator warrant.

Finally, Howard contends that the Commission executed a separate 1998 parole violator warrant in 2000 or 2002, but delayed the associated parole revocation hearing until 2004. He argues that that multiyear delay between execution and revocation was unreasonable and prejudicial, and therefore

violated his due process rights. The magistrate judge found, however, that the Commission executed the 1998 parole violator warrant in 2004. Howard's petition raises no grounds warranting reversal of that determination, and Howard does not argue that the minor delay between his 2004 warrant execution and 2004 revocation hearing violated his right to due process.

Because none of Howard's claims merits habeas relief, we affirm the judgment of the district court denying his petition.

**I.**

Howard is a serial recidivist who has served time in prison for various federal and state crimes and is currently on federal parole, with an expected parole termination date in 2016. He is a 67-year-old Vietnam veteran who has struggled for much of his life with addictions to cocaine and other drugs. He has kidney disease, which, at the time of his petition, did not yet require dialysis treatment.

The concurrent 20- and 25-year federal sentences for which Howard remains on parole were for two bank robberies Howard committed in 1970. Howard was imprisoned at the Lorton Reformatory Adult Services Complex, a federal penitentiary in Lorton, Virginia, but escaped in the early 1970s by climbing a fence, adding 15 months to his sentence. Several years later, Howard again gained release on parole, but a further series of crimes, state sentences of imprisonment, and corresponding breaks in and violations of his federal parole had, by 2011, pushed Howard's parole termination date from 1996 to 2022. After Howard filed this case, the Commission reduced Howard's parole term, giving him an anticipated release date in 2016.

Howard traveled a circuitous path to 20 extra years of federal penal supervision. After Howard served nine years in federal prison, the government paroled him in 1979. While he was on parole, Howard committed serious crimes in Virginia, including armed robbery. In 1982, the Commission issued a "parole violator warrant" for Howard for those and other parole violations. A parole violator warrant is a warrant issued by the Commission pursuant to its authority to "retake" parolees who have violated their federal parole and return them to federal prison—or at least formally to return them to the custody of the Attorney General. 18 U.S.C. § 4213(a)(2). The Commission did not immediately execute the warrant and return Howard to federal prison, however, because by then he was in state prison pursuant to his 1982 conviction and 18-year sentence for armed robbery in violation of Virginia law.

In 1985, while Howard was incarcerated in Virginia, the Commission conducted a "dispositional revocation hearing" to determine what effect Howard's parole violations would have on completion of his federal sentence. At a dispositional revocation hearing, or parole revocation hearing, the Commission may revoke parole and return an individual to federal prison, *id.* § 4214(d), and, where a parolee is convicted of a crime "punishable by a term of imprisonment" during his release on parole, the Commission may also determine that his time already spent on parole does not count toward his underlying sentence, *id.* § 4210(b)(2); *see also* 28 C.F.R. § 2.52(c)(2). The Commission is also permitted to toll a parolee's federal sentence while he serves a term of imprisonment for another offense. 18 U.S.C. § 4210(b)(2) ("[T]he Commission shall determine . . . whether all or any part of the unexpired term [of the original sentence] being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new

offense . . . ."); *see also Santa v. Tippy*, 14 F.3d 157, 158-59 (2d Cir. 1994).

At Howard's revocation hearing, the Commission decided to revoke his parole and not to credit the six years he had been out on parole toward his federal sentence. The Commission further determined that Howard, who was still incarcerated in Virginia, would not resume earning credit toward his federal sentence until 1987. As the magistrate judge explained, the decision of the Commission "effectively tolled his federal sentence by 60 months." App. at 689.

The Commission informed Howard of its findings through a Notice of Action, the disputed meaning and legal effect of which are central to this appeal. A Notice of Action is, *inter alia*, a document that the Commission must provide to a parolee following a parole revocation proceeding. *See, e.g.*, 18 U.S.C. § 4214(e); 28 C.F.R. § 2.13(c). As relevant here, following a parole revocation hearing, the Commission must "furnish the parolee with a written notice of its determination." 18 U.S.C. § 4214(e). Howard's Notice of Action following his 1985 parole revocation hearing attempted to communicate to him that the Commission had decided to revoke his parole and deny him credit for the six years he had spent on parole since his release from federal prison in 1979 (including the time he had already served in prison in Virginia). The Notice of Action also sought to inform him that time would again start counting towards his federal sentence upon his release from Virginia custody into federal custody or after he spent an additional five years in state prison. No part of his first five years in Virginia custody, were he to serve that long, would count toward his federal sentence.

In 1987, with Howard still imprisoned in Virginia, his federal parole began to run again. The effect of the Commission's decision was to move back eight years, from 1996 to 2004, the date of expiration of Howard's federal sentence. Because of his various parole revocations and withdrawals of parole credit, Howard was back at square one with respect to his remaining 17-year federal sentence.[2] It was as if the sentence had been reset to 1979, when he was released on parole, and the eight years between then and 1987 never happened.

In 1992, after Howard served nine years in state prison, Virginia paroled him, and he remained on parole, not reincarcerated, pursuant to his federal sentence. In the ensuing years Howard again violated his federal parole by committing cocaine-related crimes and other offenses in violation of Virginia law. In 1998, the Commission issued a new parole violator warrant for Howard, charging him with parole violations dating back to 1992, including the cocaine-related crimes. At the urging of Howard's federal probation officer, however, in order to afford Howard an opportunity to participate in a non-prison-based drug treatment program through the Veterans Administration, the Commission ordered the 1998 warrant be held in abeyance and did not immediately arrest Howard and return him to prison. In 2000, the Commission—apparently by mistake—issued a second warrant listing the same charges plus two additional technical parole violations for Howard's failure to report a change of residence and failure to submit required reports. The Commission withdrew that second warrant in 2001. Meanwhile, the March 1998 warrant remained in abeyance.

---

[2] Howard had 17 years remaining on his 26-year term, having served nine years in federal prison from 1970 to 1979 that, unlike years served as parole, could not be revoked.

In 2002, Virginia arrested, tried, and convicted Howard of the possession of cocaine with intent to distribute, sentencing him to two years imprisonment. Shortly thereafter, the Commission supplemented its 1998 parole violator warrant to include the 2002 arrest and ordered that it be reactivated. The Commission ordered that Howard be arrested or, if he was already in Virginia custody, that the warrant be lodged as a "detainer" at the institution where he was being held. A warrant lodged or placed as a detainer instructs another jurisdiction that is holding an individual not to release him until the warrant-issuing jurisdiction has had an opportunity to take him into custody. *Moody v. Daggett*, 429 U.S. 78, 80 n.2 (1976).

Upon Howard's release from Virginia custody in 2004, federal officials executed the 1998 warrant and took Howard into federal custody, incarcerating him at the Albemarle-Charlottesville Joint Security Complex. The Commission conducted a parole revocation hearing 127 days later and found that Howard had violated the conditions of his parole. As it had in 1987, the Commission reset Howard's parole clock, revoking the approximately 17 additional years he had spent on federal parole since 1987, and assigning him a new release date in 2021. Subsequent parole violations added to his sentence, moving his release date to 2022.

In 2006, Howard, who was no longer incarcerated, began to seek relief in federal court from his continuing federal parole. The district court in 2010 construed one of his complaints as a petition for habeas corpus, directed the Commission to show cause why the writ should not issue, and referred the petition to a magistrate judge. Howard's petition argued, among other things, that between 1982 and 1987 his federal and state sentences should have run concurrently, and

that his 2004 parole revocation hearing was unreasonably and prejudicially delayed.

In light of that petition, the Commission reconsidered Howard's parole term. The Commission found that irregularities associated with the execution of his 1998 parole violator warrant, along with his illness and advanced age, justified a reduction in the term. The Commission elected to credit him with approximately five years toward his parole termination date, revising it from 2022 to 2016.

The magistrate judge held a three-day evidentiary hearing in 2011 and issued a Report and Recommendation denying Howard's habeas petition. The district court adopted the Report and Recommendation. This appeal followed.

## II.

In reviewing a district court's decision to grant or deny a habeas corpus petition, we review its factual findings for clear error, *see Amadeo v. Zant*, 486 U.S. 214, 223 (1988), and its legal conclusions *de novo*, *see Barhoumi v. Obama*, 609 F.3d 416, 423 (D.C. Cir. 2010).

## A.

The Commission did not improperly deny Howard credit towards his federal sentence from 1982 to 1987 when he was a prisoner in Virginia. Howard pins his argument on language in the Notice of Action the Commission issued following his 1985 parole revocation hearing. Appellant Br. at 15, 21-30. The paragraph—under a heading that states that at the conclusion of Howard's hearing "the following action was ordered" (hereinafter the "order")—explains:

Revoke parole; none of the time spent on parole shall be credited. The unexpired portion of your federal sentence shall commence upon your release from state custody or upon federal reparole to your state sentence, whichever comes first. Continue to a presumptive parole from the violator term after the service of sixty months (July 1, 1987).[3]

---

[3] The language of the Notice of Action is almost certainly adapted directly from the Commission's Rules and Procedures Manual. The 1984 Manual instructs that Commission orders revoking time and retroactively denying credit for street time should read:

Revoke parole; none of the time spent on parole shall be credited. The unexpired portion of your federal sentence shall commence upon your release from state custody or upon federal reparole to your state sentence, whichever comes first;

. . . (Continue for a presumptive) parole from the violator term (date).

U.S. Parole Comm'n, U.S. Dep't of Justice, Rules and Procedures Manual 168 (1984) ("1984 Manual") (parentheses in original). Very similar language appears in the current Rules and Procedures Manual. *See* U.S. Parole Comm'n, U.S. Dep't of Justice, Rules and Procedures Manual 282 (2010) ("2010 Manual"). Because the Commission's guidelines instruct the Commission what to say in its Notices of Action, these confusing and ungrammatical phrases have been repeated verbatim in innumerable Notices of Action nationwide for decades. This lack of clarity is troubling because a Notice of Action is the document meant to communicate to a parolee how his sentence has been recalculated and thus how much more time he must spend in custody—whether in prison or on parole. The Notice of Action should inform the parolee's critical decisions about, for instance, whether to take an appeal. The government should place a high priority on writing such documents

All parties agree that the phrase "violator term" refers to Howard's underlying federal sentences for which he was scheduled to serve 26 years. The parties also agree that the order revoked Howard's parole and denied him credit for his three years of street time—time spent free on parole—between 1979 and 1982.

The meaning of the remainder of the order is contested. Howard argues that it "can *only* be interpreted to impose a concurrent term from 1982-1987," i.e. as announcing that his state sentence and federal parole ran concurrently rather than consecutively. Appellant Br. at 21 (emphasis added). The government disagrees, contending that the Notice of Action "makes clear it will not give [Howard] credit toward his original federal sentence for all of the time spent in state prison, and therefore, the sentences were consecutive, not concurrent." Appellee Br. at 36-37.

Howard contends that the district court must be reversed for legal error because he is entitled to release based on his interpretation of the Notice of Action. But the district court's erroneous interpretation of the Notice of Action matters only if Howard has some underlying right to relief that turns on what it says. Howard's briefing focuses on the Notice of Action's convoluted wording, apparently to support a claim that it violated his rights by failing to give him adequate notice that his terms ran consecutively. If Howard indeed received no reasonable notice of the Commission's decision and was prejudiced thereby, he might have a due process claim. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Whatever the precise nature of his claim, however, Howard

in plain English. One would reasonably expect that the Commission could draft more plainly the language that it intends be used to inform uncounseled laypeople in federal custody of matters vitally affecting their freedom.

has advanced no ground warranting habeas corpus relief. The Notice of Action, despite its painful legalese, ordered his sentences to run consecutively. Together with his participation in his 1985 parole revocation hearing and his receipt in 1987 of other Commission documents reflecting the consecutive sentence, the Notice of Action adequately informed Howard of the Commission's decision to run his terms consecutively.

The parties spar over the appropriate level of deference the Court should afford to the Commission's interpretation of the Notice of Action. Howard argues for no deference; the Government for maximal deference. Appellant Br. at 16-20; Appellee Br. at 29-32; *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997). A decision regarding the precise degree of scrutiny is unnecessary, because, even when we review it without deference, we find that the Commission's Notice of Action makes sufficiently clear that Howard's Virginia and federal sentences would run consecutively.

The second sentence of the order sets the date on which Howard's federal sentence would again start to run as one of two dates, "whichever [came] first": either (a) his "release from state custody," i.e., when Virginia released him from prison; or (b) "federal reparole." App. at 83. The date of Howard's "federal reparole" is specified by the final sentence, which provides that Howard would "[c]ontinue to a presumptive parole from the violator term"—that is, his 26-year federal sentence—"after the service of sixty months (July 1, 1987)." *Id.* In other words, even though Howard's federal and state sentences were not generally concurrent, the Notice of Action provided that Howard would become presumptively entitled to concurrent federal reparole after 60 months, running the federal clock again even if he were then still in Virginia custody. Howard remained in Virginia state prison

until 1992—after July 1, 1987—and therefore the second alternative "[came] first" and Howard was "reparoled to [his] state sentence," so the state sentence started counting as service of federal parole as of July 1987.

Howard argues that our reading of the Notice of Action is too generous, and that the key words, "from the violator term," cannot bear the meaning the Commission and the court ascribe to them. In Howard's view, the Commission could not "reparole" him "from" a violator term unless he was in fact serving time toward that violator term when he was reparoled "from" it. Thus, the sentence that reads "[c]ontinue to a presumptive parole from the violator term after the service of sixty months (July 1, 1987)" implies, in Howard's estimation, that the notice of action imposes a concurrent term from 1982 to 1987. Appellant Br. at 21-22. Howard argues that the words "from the violator term" are used elsewhere in the Notice of Action to mean what he says they do. For example, in the "Reasons/Conditions" section the Commission explains: "If you are still in state custody as of the above date [July 1, 1987], you will have a presumptive parole from the violator term to your state sentence on the above date." App. at 83. Again, according to Howard, the government could not have paroled him "from" his violator term unless he was already serving it concurrently with his state sentence. Thus Howard argues that the Notice of Action states that his federal sentence was to run concurrently with his Virginia sentence. Howard further contends that the default presumption should be that federal and state sentences run concurrently, unless the Commission speaks clearly to the contrary. Because, in his view, "nowhere did the Commission explicitly impose a consecutive sentence" in his case, his time spent in Virginia must be credited toward his federal sentence.

We disagree. The language of the "order" section of the Notice of Action is admittedly confusing. It does not explicitly say that Howard's state and federal terms are to run consecutively. But once we parse it carefully and in context, we understand the Notice of Action to state the Commission's determination that Howard's terms were to run consecutively. To read the Notice of Action as Howard suggests ignores the fair import of its words. The phrase "parole from the violator term" is not meant to indicate that he would have been serving the violator term immediately before the recommencement of parole; instead, "parole from the violator term" simply identifies the criminal sentence from which, for the Commission's purposes, he would be paroled—i.e. that the parole pertains to the federal sentence of incarceration, or "violator term." According to the Notice of Action, Howard was to be returned to parole "from," as in originating in or relating to, his federal violator term.

This understanding is reinforced by the remainder of the Notice of Action's text. On the same page as the disputed "order" paragraph, the Notice of Action's "Reasons/Conditions" section explains that, if Howard were still in state custody as of July 1, 1987, he would "have a presumptive parole from the violator term to [his] state sentence" on July 1, 1987. App. at 83. The Notice of Action also stated that, in circumstances like Howard's—given the severity of his parole violations—the "[r]eparole guidelines indicate a customary range of 48-60 months to be served before re-release" and that "[a]fter review of all relevant factors and information presented, a decision outside the guidelines . . . is not found warranted." *Id.* Those explanations of the Notice of Action's practical consequences fortify our understanding of the meaning of the document as a whole.

15

Howard also received a parole certificate in August 1987, a month after his July 1987 reparole date. The parole certificate stated that Howard's parole would extend through October 1, 2004. The date on the parole certificate presupposed that Howard's state and federal sentences ran consecutively. Howard received that document but did not object to it for decades, despite the fact that, according to his current position, it misstated his parole termination date by several years. *See* App. at 677.

Howard insists that, when a Notice is ambiguous on the point, the presumption should be that sentences run concurrently. Yet, when Howard had his parole revocation hearing in 1985, the Commission's public guidelines and regulations, as well as decisions of the Supreme Court and numerous Federal Courts of Appeals, were clear and unanimous that the Commission's policy was to run federal and state sentences consecutively unless otherwise specified. *See, e.g.*, *Moody*, 429 U.S. at 85; *Still v. U.S. Marshal*, 780 F.2d 848, 855 (10th Cir. 1985) (Logan, J., dissenting); U.S. Parole Comm'n, U.S. Dep't of Justice, Rules and Procedures Manual 119 (1984) ("1984 Manual"). The Commission's policy has never wavered, and was its policy at the time of Howard's revocation hearing and Notice of Action. 28 C.F.R. § 2.47(d)(2) (1984).[4] Howard insists that he relied on the advice of his lawyer in concluding that his terms would run concurrently. Evid. Hearing Tr. May 11, 2011 a.m., at 15:12-18. But even if Howard was confused, his confusion was not objectively reasonable in the circumstances of this case. Even accepting that the Notice of Action is somewhat unclear standing alone, there can be little doubt as to its meaning when it is read together with the other relevant facts and

---

[4] The policy was renumbered from § 2.47(c) to § 2.47(d)(2) between 1976 and 1986, and now is codified at § 2.47(e)(2).

against the background of generally available and directly relevant legal sources.

In sum, the actions of the Commission at the time Howard received his Notice of Action, along with the context and circumstances in which the Commission issued it, bolstered the Commission's message that it never intended his federal and state sentences to run concurrently. Every document, memorandum, transcript, certificate, and notice of any kind issued by the Commission regarding Howard's parole—save, arguably, Howard's Notice of Action—made clear that Howard's sentences ran consecutively. Howard stakes his case on an admittedly awkward phrase in his Notice of Action. Yet the Commission's reading of the order's text and its further explication of its determination in the remainder of the Notice combine to defeat his claim that the Commission ordered his sentences run concurrently.

**B.**

Howard raises several arguments centered on his contention that the Commission either did not execute his 1982 parole violator warrant in 1987, or did not execute it properly. The magistrate judge concluded that "the 1982 warrant was executed, and it was executed on July 21, 1987." App. at 687. Howard claims that decision was erroneous. With respect to the propriety of the warrant's execution, Howard argues that the Commission never executed the 1982 warrant because he never received notice of its execution, and because federal agents never took him into physical custody—both of which, he argues, are necessary for a parole violator warrant to be executed.

Howard also raises several procedural challenges to his habeas corpus hearing before the magistrate judge, all of which arise out of his dissatisfaction with the judge's and his

own attorney's treatment of his contentions regarding execution of his 1982 parole violator warrant. He claims that the magistrate judge abused her discretion and denied him due process of law because she did not allow him to call several witnesses he argues would have been able to help him to establish that the Commission never executed the 1982 warrant. Howard further asserts that he received ineffective assistance of counsel at his evidentiary hearing because his attorney did not do enough to help him to procure those witnesses or to press his argument that the Commission did not execute the 1982 warrant.

Those arguments fail together because they rest on the faulty premise that it is legally material whether Howard's 1982 parole violator warrant was ever executed. Neither the Due Process Clause nor any statute or regulation obligated the Commission to execute the 1982 warrant, *see Moody*, 429 U.S. at 87; *Donn v. Baer*, 828 F.2d 487, 489 (8th Cir. 1987), and the Commission's authorizing statute did not require it to execute the warrant in order to exert jurisdiction over Howard, *see* 18 U.S.C. §§ 4213(a), 4214(d); *see also Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 91 (2d Cir. 1986). Howard has not identified nor can we discern a violation of any right Howard might have that would turn on the execution of his 1982 parole violator warrant.

To understand why the nonexecution of the 1982 warrant was legally innocuous, it may be helpful to review the interplay between parole violator warrants and parole revocations. Such warrants are used by the Parole Commission to take parolees back into federal custody for alleged parole violations. When such a warrant is executed, federal law requires that the parolee receive a prompt parole revocation hearing to determine what consequences will flow from the parolee's alleged violation. *See Sutherland v.*

18

*McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983). But the inverse is not the case. Even if there is a revocation hearing, there is no similar requirement that the outstanding parole violator warrant to which it relates ever be executed. As the Supreme Court explained in *Moody*, "execution of the [parole violator] warrant and custody under that warrant" are the "operative event[s] triggering any loss of liberty attendant upon parole revocation." 429 U.S. at 87. Thus, "the mere issuance of a parole violator warrant works no present deprivation of protected liberty sufficient to invoke due process protection." *Id.* at 85. The "Commission . . . has no constitutional duty to provide [a parolee] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant." *Id.* at 89. Howard was already in custody in Virginia.

This asymmetry explains why Howard received a parole revocation hearing in this case even though the Commission may never have executed the parole violator warrant to which it was ostensibly linked. *Moody* established that the Commission may delay executing a parole violator warrant—and therefore holding a parole revocation hearing—until the "expiration of [a] parolee's intervening sentence." *Id.* at 89. The dissenters in *Moody* were critical of the Court's conclusion that the Commission had "no obligation to go forward with the revocation hearing until after the parolee has completed the service of his sentence for [a] second offense" and could therefore "wait as long as 10 or 20 years" before holding a hearing. 429 U.S. at 91 (Stevens, J., dissenting). Perhaps mindful of that perceived unfairness, the Commission has made it a practice to act earlier to hold revocation hearings on parole violations that result in an independent term of imprisonment. *See* Paroling, Recommitting, and Supervising Federal Prisoners, 46 Fed. Reg. 35,635, 35,635 (July 10, 1981) (recognizing 1980 change in policy to

"provid[e] revocation hearing more promptly for persons incarcerated with new sentences"). At the time of Howard's incarceration, the Commission's regulations advised that such hearings were to be held within 24 months of an individual's incarceration, and that the underlying warrant was to be let to "stand as a detainer." *Id.* at 35,637 (announcing extensions to, *inter alia*, 28 C.F.R. § 2.47(b)(1)(i)). But once a pre-execution parole revocation hearing has been held, as it was in Howard's case in 1985, there is no requirement that the underlying parole violator warrant be executed if it is not needed for the purpose of arrest or detainer. For this reason, the policy of the Commission at the time of Howard's incarceration in Virginia in the 1980s, as today, is to withdraw parole violator warrants that are no longer needed, not to execute them. *See* 1984 Manual at 123; *accord* U.S. Parole Comm'n, U.S. Dep't of Justice, Rules and Procedures Manual 132 (2010) ("2010 Manual").

In Howard's case, the Commission's 1985 parole revocation hearing was of this pre-execution type. It pertained to the same alleged parole violations that led to the issuance of his 1982 parole violator warrant. Once the Commission held the hearing, whether the Commission executed the parole violator warrant or not no longer mattered, so long as its actions conformed to its decision in Howard's parole revocation hearing. The Commission let Howard's parole violator warrant stand as a detainer between 1982 and 1987 because the Commission concluded at his parole revocation hearing that Howard should serve at least five years in prison for his parole violations—and if Virginia released him sooner, for whatever reason, the Commission wanted to ensure it would be notified so it could incarcerate him at a federal institution to complete the remainder of his 60 months in prison. But once 60 months passed, the Commission no longer sought to return Howard to federal

prison, so execution of the warrant was unnecessary. As of July 21, 1987, in the eyes of the Commission, Howard was once again on federal parole whether his warrant was executed or not.

The premise of the balance of Howard's claims relating to the 1982 parole violator warrant is that, if he could prove the warrant was not executed or executed improperly, he would be entitled to habeas corpus relief; the error of that premise is fatal to the related claims. The magistrate judge permissibly exercised her lawful discretion in determining that Howard's proffered witnesses were irrelevant because their testimony was directed at an extraneous issue. Howard's counsel likewise did not render ineffective assistance. Whether Howard's attorney had succeeded in locating the witnesses or pressing Howard's warrant-execution contentions more forcefully, it would not have supported his habeas petition. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

## C.

The Commission did not prejudicially delay Howard's 2004 parole revocation hearing. Federal law requires that a revocation hearing be held 90 days after execution of a parole violator warrant. 18 U.S.C. § 4214(c). The Commission's failure to meet the statutory deadline, however, is not grounds for habeas corpus relief unless the delay is so prejudicial to the parolee that it violates his due process rights. *Sutherland*, 709 F.2d at 732; *see Morrissey*, 408 U.S. at 488-89. In this Circuit, relief for such a due process violation is granted only "where a petitioner establishes that the Commission's delay in

holding a revocation hearing was both unreasonable and prejudicial." *Sutherland*, 709 F.2d at 732.

Howard argues that the Commission delayed his 2004 parole revocation hearing by several years because it executed his 1998 parole violator warrant (or "an invalid duplicate") in either 2000 or 2002. In Howard's view, any such execution started the parole-revocation hearing clock. Howard argues that the revocation hearing was thus unlawfully delayed by two to four years, to his material prejudice. Had his revocation hearing been promptly convened, Howard argues, he would have had the opportunity to call additional witnesses and introduce more mitigating evidence at that hearing, and therefore the Commission would have been far less likely retroactively to revoke all of his credit for time spent on parole between 1987 and 2004.

The magistrate judge found that the Commission executed his 1998 parole revocation warrant in 2004, and that it held his parole revocation hearing 127 days later—37 days beyond the statutory deadline. In particular, the magistrate judge determined that the Commission issued a parole violator warrant in 1998, and then held it in abeyance so that Howard could participate in a non-prison-based drug treatment program. App. at 668. The Commission issued a similar, but not identical, parole violator warrant in 2000 that it withdrew in 2001 as mistaken and duplicative. *Id*. at 668-69. In 2002, the Commission supplemented the 1998 warrant to reflect crimes Howard committed in 2001 and 2002 and then lodged the warrant as a detainer. *Id*. at 669-70. The Commission executed the 1998 warrant in 2004. *Id*. at 670.

In support of his contention that the Commission executed his 1998 warrant in 2000 or 2002, such that his 2004 revocation hearing was unreasonably delayed by several

years, Howard claims that the magistrate judge's Report and Recommendation failed affirmatively to reject his proffered evidence of multiple executions of the same warrant, and thereby left those factual questions open and unresolved. But the magistrate judge heard and considered Howard's arguments and evidence on that issue. Her opinion quotes, summarizes, and presents Howard's testimony explaining his contention that the Commission executed his 1998 parole violator warrant in either 2000 or 2002. App. at 675 ("Petitioner testified that in February or March, 2001, he '[was] released on bond . . . for the local Virginia charge[] . . . , [and] from the Federal parole warrant[.]'" (alterations in original)); *id.* at 676 ("Petitioner testified that he was arrested in October, 2002 in Arlington County 'for a Federal parole violator warrant[,]' and that the United States Marshals took him to the jail in Alexandria, then returned him to Arlington County." (alterations in original)); *see also id.* at 676-78 (describing government's cross-examination focused on showing that neither warrant execution happened). The magistrate judge did not fail to address Howard's evidence, but considered it and did not credit it.[5]

Howard cannot relitigate the magistrate judge's factual conclusions regarding his warrant issuances and executions unless he can show clear error. On questions regarding "specific factual determinations about what happened" and

---

[5] The magistrate judge devoted several paragraphs of the Report and Recommendation to explaining why the Commission's delay in executing the 1998 warrant until 2004 did not prejudice Howard. App. at 689-91. He does not appeal on that ground. That discussion is relevant here, however, because its factual premise is that the Commission executed the 1998 warrant in 2004. In failing to find that an earlier warrant execution occurred, the magistrate judge's opinion rejected Howard's arguments that the Commission executed the 1998 warrant in either 2000 or 2002.

judgments about "whether evidence is sufficiently reliable to credit," we may reverse the judgment below only if it is clearly erroneous. *Obaydullah v. Obama*, 688 F.3d 784, 792 (D.C. Cir. 2012) (internal quotation marks omitted). Howard identifies evidence pointing both ways on the question whether the Commission executed the 1998 warrant in 2000 or 2002, *see, e.g.*, Appellant Br. at 40-46, but his analysis of the record does not leave this Court with a "definite and firm conviction that a mistake has been committed," *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Howard's habeas claim turns on establishing that the Commission's delay of his parole revocation hearing was both unreasonable and prejudicial. He asserted a lengthy delay of two to four years and his only claim of prejudice relates to that longer period. The magistrate judge's finding that the Commission executed the warrant in 2004 eliminates Howard's claim that the Commission's delay prejudiced him. The only delay at issue on these facts is that his hearing was not held until 127 days after his warrant execution—37 days beyond the 90-day statutory deadline. Howard does not contend that that delay during 2004 was unreasonable or prejudicial; indeed, he disclaims any such prejudice. Appellant Reply Br. at 15.

Because the Commission validly executed Howard's warrant in 2004, and he has not attempted to show that the delay thereafter in holding his parole revocation hearing was unreasonable or prejudicial, we hold that he cannot obtain habeas relief on that ground.

\* \* \*

For the foregoing reasons, the decision of the district court is affirmed.