NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 7 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KYLE EYRE, Personal Representative of
Cody Eyre,

          Plaintiff-Appellee,

 v.

CITY OF FAIRBANKS, a municipal
corporation; et al.,

          Defendants-Appellants,

 and

STATE OF ALASKA,

          Defendant.

No.    23-35206

D.C. No. 4:19-cv-00038-SLG

MEMORANDUM*

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted May 20, 2024
Anchorage, Alaska

Before:  BYBEE, FRIEDLAND, and MILLER, Circuit Judges.
Dissent by Judge FRIEDLAND.

On December 24, 2017, police officers in Fairbanks, Alaska, fatally shot

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Cody Dalton Eyre. Eyre's estate brought claims under 42 U.S.C. § 1983 and state law against the officers and the City. The district court denied the defendants' motion for summary judgment. The officers appeal the denial of summary judgment based on qualified immunity on the section 1983 claim, as well as the denial of summary judgment on the state-law claims. The City appeals the district court's denial of summary judgment on the estate's claim for negligent failure to train and supervise. We reverse in part and dismiss in part.

We have jurisdiction under 28 U.S.C. § 1291 to review a denial of qualified immunity "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "We review de novo the district court's decision denying summary judgment on the basis of qualified immunity." *Peck v. Montoya*, 51 F.4th 877, 884 (9th Cir. 2022). We assume that the estate's version of the material facts is correct, and we resolve all genuine disputes of fact in its favor. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (per curiam).

1. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In resolving whether [the officers] are entitled to qualified immunity on summary judgment . . . . [w]e first ask whether the facts, viewed in the light most favorable

2

to the plaintiff, demonstrate that the [officers] violated a constitutional right." *Peck*, 51 F.4th at 887. An officer's use of deadly force "is a seizure subject to the reasonableness requirement of the Fourth Amendment," *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), so our inquiry focuses on whether the officers' conduct here was "'objectively reasonable' in light of the facts and circumstances confronting them," *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because the officers' actions in this case were objectively reasonable, the officers did not violate the Fourth Amendment.

The "most important" factor bearing on the reasonableness of deadly force "is whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir. 2005) (en banc)); *accord Smith v. Agdeppa*, 81 F.4th 994, 1004 (9th Cir. 2023). Here, the threat that Eyre posed is dispositive. Police body cameras captured Eyre yelling, "[y]ou guys can . . . die right now." All six officers stated that Eyre then pointed his gun at them, and the body cameras corroborate their statements. "When an individual points his gun 'in the officers' direction,' the Constitution undoubtedly entitles the officer to respond with deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (quoting *Long v. City & County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007)); *see Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994); *Cruz v. City of Anaheim*, 765 F.3d

1076, 1078 (9th Cir. 2014). Based on the undisputed fact that Eyre threatened to kill the officers and then pointed a gun at them, the officers' use of force did not violate the Fourth Amendment.

Eyre's estate argues that the officers failed to warn Eyre that they might employ deadly force and failed to use less intrusive alternatives. Those factors are relevant in assessing the reasonableness of deadly force, *see S.R. Nehad v. Browder*, 929 F.3d 1125, 1137–39 (9th Cir. 2019), but even if they favored the estate, they would not materially alter our analysis in light of Eyre's imminent threat. In any event, the requirement of a warning "is not a one-size-fits-all proposition that applies in every case or context," and here the officers reasonably point out that a warning would have undermined their efforts at deescalation. *Smith v. Agdeppa*, 81 F.4th at 1006. As to less intrusive means, the record shows that the distance between Eyre and the officers and the limited resources available to the officers left them with no practical alternatives.

2. Eyre's estate asks us to separately evaluate the different volleys of shots that the officers fired, arguing that even if the officers' initial shots were reasonable, their subsequent volleys were excessive. The estate forfeited that theory by failing to raise it in the district court. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

The complaint contains no hint that the officers' volleys should be evaluated

separately. The estate claims to have mentioned that theory in its opposition to the officers' motion for summary judgment, but that document contains only an oblique reference to the theory in a single sentence, couched in a discussion of failure-to-warn issues and unsupported by any legal citations. Accordingly, we cannot conclude that this theory was "raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Unsurprisingly, the district court did not address it, and we likewise decline to consider it. *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal . . . .").

3. The officers also appeal the district court's denial of summary judgment on several state-law claims. The district court's denial of summary judgment on these claims is "no different from the denial of any ordinary motion for summary judgment, and so is not immediately appealable." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019). We may exercise pendent appellate jurisdiction over otherwise non-appealable claims only if those claims are "'inextricably intertwined' with or 'necessary to ensure meaningful review of' decisions over which we have [interlocutory] jurisdiction." *Pettibone v. Russell*, 59 F.4th 449, 452 (9th Cir. 2023) (alteration in original) (quoting *Meredith v. Oregon*, 321 F.3d 807, 812 (9th Cir. 2003)). That is not the case here.

5

The officers argue that "[a]ssault and battery is properly characterized as a state law excessive force claim" under Alaska law such that our section 1983 analysis resolves the officers' liability for assault and battery. But assault and battery is a common-law claim under Alaska law, while "[t]he use of excessive force is a statutory violation under Alaska law." *Maness v. Daily*, 307 P.3d 894, 900 (Alaska 2013); *see State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1092 n.47 (Alaska 2012). In other words, the claims are governed by different legal standards, so they are not inextricably intertwined. *See Hernandez v. City of San Jose*, 897 F.3d 1125, 1140 (9th Cir. 2018).

As to negligence, the officers argue that if they are not liable under section 1983, then they cannot be liable for ordinary negligence under Alaska law. But the Alaska Supreme Court has held that defendants can be liable for negligence but not liable under section 1983, *Hildebrandt v. City of Fairbanks*, 957 P.2d 974, 976 (Alaska 1998), and also that plaintiffs bear different burdens for Fourth Amendment and negligence claims, *Mattox v. State, Dep't of Corr.*, 323 P.3d 23, 27–28 (Alaska 2014). Because our qualified immunity decision does not "necessarily resolve[]" the officers' liability for ordinary negligence under Alaska law, we lack pendent jurisdiction over the district court's denial of summary judgment on this claim. *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000).

6

4. The City appeals the district court's denial of summary judgment on the estate's claim for negligent failure to train and supervise. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). As with the state-law claims, "[t]he denial of summary judgment to a municipal defendant on a *Monell* claim is . . . not immediately appealable." *Horton*, 915 F.3d at 603. Because "municipal defendants may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights," this claim is not inextricably intertwined with our qualified immunity analysis. *Id.* Accordingly, we lack jurisdiction to review it.

The parties shall bear their own costs on appeal.

**REVERSED in part and DISMISSED in part.**

*Eyre v. City of Fairbanks*, 23-35206

FRIEDLAND, Circuit Judge, dissenting:

I agree with the majority's holding that the officers did not violate the Fourth Amendment when they initially opened fire, and that we lack pendent jurisdiction over the state law claims. I respectfully dissent, however, because I believe the officers' gunshots should be divided into separate volleys for the qualified immunity analysis. Taking the facts in the light most favorable to Plaintiff, there was time between the shots and the circumstances changed. *See Zion v. County of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017). I believe Plaintiff's contention in the district court that the "second round" of gunshots was unreasonable was sufficient to preserve that issue. Because the district court analyzed all the volleys together, I would remand to allow the district court to conduct the qualified immunity analysis for the second volley in the first instance.

1